J.S43037/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,     :     IN THE SUPERIOR COURT OF
    :         PENNSYLVANIA
                 Appellee     :
    :
            v.     :
    :
JOHN M. SMALLWOOD,     :
    :
              Appellant     :     No. 2231 EDA 2013

Appeal from the Judgment of Sentence July 26, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0006178-2012

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:         **FILED APRIL 07, 2015**

Appellant, John M. Smallwood, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following a jury trial and his convictions for murder in the first degree[1] and possession of an instrument of crime[2] ("PIC"). Appellant contends (1) the trial court erred in refusing to permit him to represent himself, (2) the evidence was insufficient to find him guilty of murder in the first degree, (3) the verdict on the charge of murder in the first degree was against the weight of the evidence, and (4) counsel was ineffective during closing argument. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 907(a).

The trial court summarized the facts of this case as follows:

These charges arose out of an argument between Appellant and his lover of approximately six (6) years, whom Appellant lived with off and on. The decedent, Shawn Andrews ("Andrews"), was killed on Thursday, March 22, 2012 at Andrews' apartment at 19th and Bainbridge Streets. At approximately 2 a.m. that morning, Appellant and Andrews were getting high with female friends. After the females left, Appellant and Andrews began arguing over the purchase of additional drugs. This argument [led] to Andrews telling Appellant he had to leave. Appellant refused to leave and as Appellant proceeded past Andrews towards the bedroom, Andrews pushed him. Their argument grew into a physical altercation. Andrews picked up a pair of scissors, Appellant grabbed a knife, and the two men began to fight. Appellant initially stabbed Andrews in the side of the jaw and Andrews began to scream. Appellant stabbed Andrews approximately seven (7) times in the head, neck, and back until the knife bent, causing Andrews to fall to the ground. As Andrews lay on his back on the floor screaming, Appellant grabbed a clothing iron, and got on top of Andrews. Appellant beat Andrews in the head with the iron until the metal plate from the iron detached, breaking the iron. Appellant struck Andrews approximately 28 times with the iron.

As Andrews lay on the floor bleeding out, Appellant grabbed a blanket from inside the apartment, wrapped Andrews' body, and [dragged] Andrews into the closet in the bedroom. After doing so, Appellant slept in Andrews' bed and awoke the next morning on Friday, March 23, 2012. Before Appellant left Andrews' apartment, he turned the thermostat down to fifty degrees Fahrenheit ($50^0$ F) to cover the smell of Andrews' dead body. Appellant then collected several items including bloody clothes and the knife he used to kill Andrews, placed them in a blue bag, and dumped the bag in a trash can at the 69th Street Market-Frankford Line Terminal.

On Friday, March 23, 2012, after Andrews failed to meet with his friend of twenty-five (25) years, Seavin Burnett ("Burnett"), and failed to answer Burnett's

numerous phone calls, Burnett went to Andrews' apartment with his roommate, Derrick Harrison ("Harrison"), to check on Andrews. Burnett used his key to gain access to the apartment as Harrison waited outside. Burnett opened the door and noticed it was dark and cold. Burnett called out for Andrews a few times with no response and then locked the door and left with Harrison. Burnett and Harrison returned to Andrews' apartment the following day, Saturday, March 24, 2012, in the afternoon. Both Burnett and Harrison entered Andrews' apartment and once they were inside, noticed sheets, blankets and a red liquid on the floor in the living room area. Harrison thought it might be blood so both Burnett and Harrison went back to their car and began making phone calls to the area hospitals as they rode towards their home, believing Andrews had been hurt and possibly gone to a hospital to get aid. No hospital had a record of Andrews having received treatment. When they could not locate Andrews at the area hospitals, Burnett called 911. Burnett explained to the operator that he had been to Andrews' apartment, that things looked unusual, and that there appeared to be blood on the floor. The 911 operator asked Burnett if he would go back to Andrews' apartment and wait for the police; Burnett agreed.

In less than five (5) minutes from the time the call was dispatched by the 911 operator, Philadelphia Police Officer Carmen Palmiero ("Officer Palmiero") and her partner, Officer Sydemy Joanis ("Officer Joanis") arrived at Andrews' apartment and met Burnett and Harrison. Officer Palmiero and Officer Joanis advised Burnett and Harrison to stay outside as they entered Andrews' apartment. Officer Palmiero and Officer Joanis noticed the cold temperature of the apartment, blood on the sink and on the floor in the bathroom on the first floor, identifying a footprint as well, which they considered to be "red flags" of a possible crime. Officers Palmiero and Joanis then headed downstairs. They noticed a large amount of blood on the floor and footprints, so they began walking across the furniture as to not disturb the potential crime scene. Officers Palmiero and Joanis, with guns drawn, checked the kitchen for potential suspects and after they cleared the kitchen, they headed into the bedroom where they noticed a large red print at the bottom of the closet door.

> Officer Joanis kept his gun drawn as Officer Palmiero opened the closet door. Inside the closet, they found a large blanket at the bottom. The officers pulled back the blanket and uncovered the body of a black male, later identified as Andrews, whom they believed had been dead for a few days at that point. Paramedics arrived as they were uncovering Andrews' body and Andrews was pronounced dead on the scene by Medic 40 at 5:40 p.m.

Trial Ct. Op., 12/20/13, at 3-5.

Appellant was sentenced to a mandatory sentence of life in prison without the possibility of parole. This timely appeal followed. Appellant filed a timely court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issues for our review:

> I. Is [Appellant] entitled to a new trial as a result of court error where the court failed and refused to permit [him] to represent himself, and where there was no good reason for such failure?
>
> II. Is [Appellant] entitled to an arrest of judgment on the charge of Murder in the First Degree where the Commonwealth did not prove its case beyond a reasonable doubt; where the Commonwealth did not establish the element of the crime such as malice, premeditation and a specific intent to kill; and where there is insufficient evidence to sustain the verdict?
>
> III. Is [Appellant] entitled to a new trial on the charge of Murder in the First Degree as the verdict is not supported by the greater weight of the evidence?
>
> IV. Is [Appellant] entitled to a new trial as the result of palpable and obvious ineffective assistance of counsel during closing argument?

Appellant's Brief at 3.

First, Appellant contends the trial court violated his constitutional right to self-representation when it found his waiver of the right to counsel was not knowing, intelligent and voluntary. Appellant's Brief at 7.

We review the trial court's denial of a defendant's request to proceed *pro se* for an abuse of discretion. **Commonwealth v. El**, 977 A.2d 1158, 1167 (Pa. 2009). The Pennsylvania Supreme Court has "defined a court's discretion as the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. An abuse of that discretion is not merely an error of judgment, but . . . [a] manifestly unreasonable . . . result of partiality, prejudice, bias or ill will." **Id.** (quotation marks and citation omitted).

> A criminal defendant's right to counsel under the Sixth Amendment includes the concomitant right to waive counsel's assistance and proceed to represent oneself at criminal proceedings. **Faretta v. California**, 422 U.S. 806 [ ]. The right to appear *pro se* is guaranteed as long as the defendant understands the nature of his choice. In Pennsylvania, Rule of Criminal Procedure 121 sets out a framework for inquiry into a defendant's request for self-representation. Pa.R.Crim.P. 121. Where a defendant knowingly, voluntarily, and intelligently seeks to waive his right to counsel, the trial court, in keeping with **Faretta**, must allow the individual to proceed *pro se*. **See Commonwealth v. Starr**, [ ] 664 A.2d 1326, 1335 ([Pa.] 1995) (holding that a defendant must demonstrate a knowing waiver under **Faretta**). **See also Commonwealth v. McDonough**, [ ] 812 A.2d 504, 508 ([Pa.] 2002) (concluding that **Faretta** requires an on-the-record colloquy in satisfaction of Pa.R.Crim.P. 121, which colloquy may be conducted by the court, the prosecutor, or defense counsel.)

The right to waive counsel's assistance and continue *pro se* is not automatic however. Rather, only timely and clear requests trigger an inquiry into whether the right is being asserted knowingly and voluntarily. . . . Thus, the law is well established that "in order to invoke the right of self-representation, the request to proceed *pro se* must be made timely and not for purposes of delay and must be clear and unequivocal." ***Commonwealth v. Davido***, [ ] 868 A.2d 431, 438 (2005) [ ] ([Pa.] 2005).

***Id.*** at 1162–63 (some citations and footnotes omitted).

Pa.R.Crim.P. 121 provides in pertinent part:

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(2)(a-f).

Our Supreme Court in *El* held:

We examine first whether [the a]ppellant's request for self-representation was a timely one. If it was, [the a]ppellant was entitled to a "*Faretta* colloquy," in satisfaction of Rule 121, to ascertain on the record whether his request to waive counsel's assistance was knowing, voluntary, and intelligent. Generally, the courts of this Commonwealth have agreed with the federal courts and those of our sister states that a request for *pro se* status is timely when it is asserted before "meaningful trial proceedings" have begun. *Commonwealth v. Jermyn*, [ ] 709 A.2d 849, 863 ([Pa.] 1998) (noting with approval the Superior Court's reliance on *United States v. Lawrence*, 605 F.2d 1321 (4th Cir.1979)). *See Commonwealth v. Vaglica*, [ ] 673 A.2d 371, 373 ([Pa. Super.] 1996) (adopting "meaningful trial proceedings" standard utilized in *Lawrence*). In the context of a jury trial, the consensus is that proceedings become "meaningful" as soon as the selection of jurors begins.

*El*, 977 A.2d at 1163 (some citations omitted).

The right to self-representation can be waived. Our Supreme Court has stated:

All defendants, even those who may display the potential to be disruptive, have the right to self-representation. *Commonwealth v. Africa*, [ ] 353 A.2d 855, 864 ([Pa.] 1976). In such instances, however, it is advisable that stand-by counsel be appointed. *Id.* . . . As explained in *Africa*, in such circumstances:

> The court should explain to the defendant the standards of conduct he will be expected to observe. **If the defendant misbehaves, he should be warned that he will be removed from the court, his right to represent himself will be considered waived, and the trial will continue in his absence with standby counsel conducting the defense.** If the defendant again misbehaves, these measures should be taken. The defendant must be made to realize that his disruptive tactics will result only in his exclusion from the courtroom. His case will be tried according to law, in an attempt to do justice, whether he cooperates or not.
>
> ***Id.*** . . .

***Commonwealth v. Abu-Jamal***, 720 A.2d 79, 109 (Pa. 1998) (emphasis added).

Instantly, the trial court opined that it

> attempted to colloquy [Appellant] regarding his request to waive his right to counsel and proceed *pro se*. Throughout these proceedings, Appellant was unwilling to cooperate and was disruptive. When this [c]ourt attempted to colloquy Appellant, Appellant replied "Don't say shit to me" and voluntarily exited the courtroom. After this incident, Appellant returned to the courtroom where this [c]ourt again attempted to colloquy [him] regarding his request to represent himself and to ensure that his waiver of counsel was knowing, voluntary, and intelligent. Taking into consideration the severity of the crimes with which Appellant was charged and the possible sentence of mandatory life without parole that was faced by Appellant, this [c]ourt determined that the responses Appellant provided during the colloquy did not satisfy the knowing, voluntary, and intelligent requirements for waiver of counsel.

Trial Ct. Op. at 10 (citations to record omitted). We agree no relief is due.

In the case *sub judice*, on the day the jury was to be selected, while the court was hearing pre-trial motions, Appellant stated he did not want counsel to represent him. N.T., 7/22/13, at 10. The Court instructed Appellant to "[b]e quiet." *Id.* Appellant responded: "I don't want this guy representing me." *Id.* The court continued hearing pre-trial motions.

Appellant again interrupted the proceedings and stated: "Your Honor, I don't want this man to defend me. The Dude is not going to be my lawyer. I don't trust him. I don't believe in him. He's not been trying to help me. I'll get my own attorney." *Id.* at 13. Appellant and the court continued the discussion until Appellant was excused from the courtroom following the judge's admonition that the trial would "proceed in *absentia* . . . ." and Appellant's statement: "Y'all tripping." *Id.* at 18.

Pre-trial motions continued and Appellant returned to the courtroom. The court officer attempted to administer the oath and Appellant refused to be sworn in. *Id.* at 23. The court began to explain the jury trial procedure to him. *Id.* at 24-25. Appellant interrupted and asked if he could represent himself. *Id.* at 26. The court stated that he could not represent himself "at this point." *Id.* Appellant responded:

> Come on. My life is on the line. You telling me I can't defend myself. I don't want him as my attorney. So when I come back on appeal and get a second trial—you know, this shit is a sham. I don't know if y'all have some money involved in this shit or not, but this shit is a sham. I don't want him. He's an ineffective counsel. I do not want him as my attorney. I'll get my own. Give me seven days. I

don't want him. All right. Then leave me the fuck alone. Take me back to jail.

The Court: All right. Let me just say this.

[Appellant]: Don't say shit to me.

The Court: . . . The record will reflect that [Appellant] left the courtroom apparently voluntarily with the—in the presence of the sheriff.

([Appellant] exiting the courtroom.)

(Pause.)

([Appellant] entering the courtroom.)

*Id.* at 26-27.

The court conducted the following colloquy regarding Appellant's request to waive his right to counsel and proceed *pro se*. The court explained to Appellant that it would ask him a series of questions to determine whether he would be permitted to represent himself. *Id.* at 27. Appellant was verbally unresponsive when the court asked him if he understood the court's purpose in asking him certain questions. *Id.* The court informed Appellant that he had the right to be represented by counsel and that if he could not afford an attorney, an attorney would be appointed to represent him. *Id.* at 27.

The court asked Appellant if he knew the elements of the crimes with which he was charged, viz., murder and PIC. *Id.* at 28. Appellant responded "Yes." *Id.* The court stated:

- 10 -

Tell me, please, the elements of murder. What does the Commonwealth have to prove—you are charged with murder generally, which means that the Commonwealth would be proceeding both on first degree murder, as well as on third degree murder.

Do you understand that?

[Appellant]: No, no really.

The Court: Fine enough. That is the situation you are facing today. You're also charged with [PIC].

Now, on the murder in the first degree, are you aware that if you're convicted of that charge that you would be sentenced—the [c]ourt would have no option but to sentence you to life in prison? Did you know that?

[Appellant]: Twenty-five to 50 is life. Shit. Like I'm in my 40's, so nothing—I mean that don't scare me.

\* \* \*

The Court: . . . Do you understand the nature of the charges that are brought against you?

[Appellant]: Yes, ma'am.

The Court: Are you aware of the possible ranges of sentence in this case?

[Appellant]: Yes, ma'am.

The Court: Tell me what the ranges—

[Appellant]: I get a life in prison.

The Court: What about the murder in the third degree?

[Appellant]: I guess that's 25-50. That's what they offer.

The Court: You're guessing. What about on [PIC]?

[Appellant]: I don't know.

> The Court: . . . Do you understand that if you waive your right to counsel that you are still bound by all of the rules that would apply for an attorney in this case?
>
> [Appellant]: Say that again?
>
> The Court: If you were permitted to represent yourself—
>
> [Appellant]: Yes.
>
> The Court: —that you would be held to the same standard as if you were represented by counsel.
>
> [Appellant]:  All right.

*Id.* at 28-29, 30-31.

The court inquired as to whether Appellant understood (1) the rules of selecting a jury, (2) how to make an opening statement, (3) how to cross-examine witnesses, and (4) applicable deadlines which could result in waiver. *Id.* at 31-34.   Appellant responded: "I think you are trying to get technical with me." *Id.* at 34.  The Court stated: "This is a very technical business . . . ." *Id.*  Appellant responded:  "I understand that, Your honor. **This is why I said I would like to get me another attorney**. . . ." *Id.* (emphasis added).  Appellant referred to counsel as "a fucking liar." *Id.* at 42.  The court found that Appellant was "not prepared to represent himself, that he [was] not fully apprised of the law and the rulings of the [c]ourt that would be necessary to allow him to provide an adequate representation in this matter, so the request to represent [him]self is denied." *Id.* at 46.

Initially, we consider whether the request to proceed *pro se* was timely. Because the jury selection process had not begun, it was timely.[3] N.T. at 53; *See El*, 977 A.2d at 1163. We decline to find that Appellant waived the right to represent himself based upon his disruptive behavior in the courtroom. *See Abu-Jamal*, 720 A.2d at 110.

We find the trial court followed the framework set forth in Pa.R.Crim.P. 121 when conducting its inquiry to determine whether Appellant should be permitted to proceed *pro se*. *See* Pa.R.Crim.P. 121; *El*, 977 A.2d at 1163. We discern no abuse of discretion by the trial court's denial of Appellant's request to poceed *pro se*. *See El*, 977 A.2d at 1167.

Next, Appellant contends he is entitled to an arrest of judgment on the charge of first degree murder because the evidence was insufficient to sustain the verdict.[4] He avers that even if we assume he acted with malice, the Commonwealth did not prove premeditation or a specific intent to kill.[5]

Appellant argues:

---

[3] We note that the first panel of jurors was excused at the conclusion of the Rule 121 colloquy. N.T., 7/22/13, at 69.

[4] Appellant did not file a post-sentence motion. However, a sufficiency of the evidence claim can be raised for the first time on appeal. Pa.R.Crim.P. 606(A)(7); *Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa. Super. 2011).

[5] We note that Appellant stated to the court, out of the presence of the jury: "There's never been a denial about me committing the crime." N.T., 7/22/13, at 41.

- 13 -

Assuming that [he] acted with malice, the Commonwealth did not prove premeditation. While premeditation can be formed in but a second or so, it remains that it must be formed. . . . [T]he beating with the pipe did not demonstrate premeditation, but demonstrated a temporary disassociation from the civilities of life and while [he] must be held accountable for the crime, the crime to be held accountable for was Murder in the Three [sic] Degree and not First Degree Murder. In that the Commonwealth did not prove premeditation nor a specific intent to kill, the evidence is insufficient. . . .

Appellant's Brief at 14. We find no relief is due.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict. . . .

\* \* \*

When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235-36, 1237 (Pa. 2007) (citations and quotation marks omitted).

Section 2502(a) of the Crimes Code defines first degree murder:

**(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

- 14 -

18 Pa.C.S. § 2502(a).

Our Pennsylvania Supreme Court has stated:

> In order to sustain a conviction for first-degree murder, the Commonwealth must demonstrate that a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill, *i.e.*, the killing was performed in an intentional, deliberate, and premeditated manner. Specific intent may be established through **circumstantial evidence**, **such as the use of a deadly weapon on a vital part of the victim's body**.

***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011) (citations omitted and emphasis added). "[T]he intent to kill may be formulated in seconds." ***Commonwealth v. Baez***, 759 A.2d 936, 938 (Pa. Super. 2000)

The trial court found the evidence was sufficient to sustain a conviction for first degree murder. The court opined:

> Appellant gave a statement to police, which was read into the record by Detective Francis Kane, describing the incident. In his statement, Appellant stated that he had known Andrews for approximately seven (7) or eight (8) years. Appellant stated that he was with Andrews in the early morning of March 22, 2013, getting high with females at Andrews' apartment. Appellant stated that after the females left, an argument ensued between him and Andrews over the potential purchase of more drugs. Appellant walked into the bedroom and laid down. Appellant stated Andrews walked into the kitchen and began slamming pots, at which point Appellant got out of bed and they began to argue again. Appellant stated that Andrews told Appellant he "had to roll" but Appellant refused and Appellant stated that after that argument started, "then everything went boom." Appellant stated that he might have pushed Andrews on the way back to the bedroom and that after that, Andrews pushed him and the two men began to fight. Appellant stated that he

grabbed a knife and Andrews grabbed a pair of scissors. Appellant stated that he stabbed Andrews with the knife in the side of the jaw and Andrews "lost the scissors." Appellant stated the knife he had "bent up" so Appellant grabbed the iron. Appellant stated that as Andrews laid on his back, Appellant got on top of Andrews, and "hit him with the iron until it broke." While Andrews was lying on the floor bleeding out, Appellant covered Andrews with a quilt, stating that he "didn't want to see [Andrews'] face. Appellant then stated that he knew from watching television that rigor mortis would set in and he would not be able to move Andrews' body if he waited so he [dragged] Andrews' body into the closet.

Appellant stated that after he put Andrews' body into the closet, Appellant "passed out on the bed." Appellant stated that he awoke on Friday, March 23, 2012, gathered his things, and "turned the thermostat up." Appellant stated that he took the knife, bloody shirt, bloody pants, and bloody socks and placed the items in a blue canvas bag, which he disposed of in a trash can at the 69th Street Market-Frankford Line terminal.

Trial Ct. Op. at 6-7 (references to record omitted). The trial court concluded that viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient to sustain the verdict. *Id.* at 8.

At trial, Marlon Osbourne, M.D., assistant medical examiner for the Philadelphia Medical Examiner's Office, testified as an expert in the area of forensic pathology. N.T., 7/24/13, at 104, 110. Dr. Osbourne performed an autopsy on Andrews. *Id.* at 111. The cause of death was multiple stab wounds. *Id.* at 113. The stab wound to the left side of Andrews' neck was the fatal wound. *Id.* at 117-18. "Unless he received immediate medical attention, he would have bled out within minutes." *Id.* Appellant inflicted the wounds standing behind Andrews. *Id.* at 120. It was possible that

Andrews was lying on his stomach when the wounds were inflicted. ***Id.*** at 120-21. There were defensive wounds on Andrews' hands. ***Id.*** at 121.

There were twenty-eight linear abrasions of blunt force trauma which would be consistent with Appellant hitting Andrews with the edge of the iron. ***Id.*** at 124. Although the toxicology report indicated the presence of cocaine and cocaine metabolites, the drugs Andrews ingested did not contribute to his death. ***Id.*** at 125-26. Dr. Osbourne testified that his conclusions and observations were made "to a reasonable degree of scientific medical certainty." ***Id.*** at 129.

A conviction for first-degree murder can be sustained based upon circumstantial evidence where a deadly weapon was used on a vital part of the decedent's body. ***See Ramtahal***, 33 A.3d at 607. The intent to kill can be formulated in an instant. ***See Baez***, 759 A.2d at 939. We find no relief is due. ***See Ratsamy***, 934 A.2d at 1235-36; ***Widmer***, 744 A.2d at 751.

Third, Appellant avers that he is entitled to a new trial on the charge of murder in the first degree because the verdict was against the weight of the evidence. As a prefatory matter, we consider whether Appellant has waived this issue. In ***Commonwealth v. Sherwood***, 982 A.2d 483 (Pa. 2009), our Supreme Court opined:

> Regarding [the a]ppellant's weight of the evidence claim we note that Appellant did not make a motion raising a weight of the evidence claim before the trial court as the Pennsylvania Rules of Criminal Procedure require. ***See*** Pa.R.Crim.P. 607(A). The fact that [the a]ppellant included an issue challenging the verdict on weight of the

> evidence grounds in his 1925(b) statement and the trial court addressed [the a]ppellant's weight claim in its Pa.R.A.P 1925(a) opinion did not preserve his weight of the evidence claim for appellate review in the absence of an earlier motion. Pa.R.Crim.P. 607(A); **Steiner v. Markel**, [ ] 968 A.2d 1253, 1257 ([Pa.] 2009) (holding that inclusion of an issue in a 1925(b) statement that has not been previously preserved does not entitle litigant to appellate review of the unpreserved claim); [**Commonwealth v.**] **Mack**, 850 A.2d [690, 694 (Pa. Super. 2004)] (holding weight claim waived by noncompliance with Pa.R.Crim.P. 607, even if the trial court addresses it on the merits). [The a]ppellant's failure to challenge the weight of the evidence before the trial court deprived that court of an opportunity to exercise discretion on the question of whether to grant a new trial. Because "appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence," **Commonwealth v. Widmer**, [ ] 744 A.2d 745, 753 ([Pa.] 2000), this Court has nothing to review on appeal. We thus hold that [the a]ppellant waived his weight of the evidence claim because it was not raised before the trial court as required by Pa.R.Crim.P. 607.

**Id.** at 494 (some citations and footnotes omitted).

In the case *sub judice*, Appellant did not raise the weight of the evidence before the trial court. Therefore, we find the issue is waived. **See** Pa.R.Crim.P. 607(A); **Sherwood**, 982 A.2d at 494.

Lastly, Appellant contends he is entitled to a new trial as the result of the ineffective assistance of counsel during closing argument. It is well-established that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." **Commonwealth v. Grant**, 813 A.2d 726, 738 (Pa. 2002). There are two exceptions:

> First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.
>
> Second, with respect to other cases and claims, including cases such as [**Commonwealth v. Bomar**, 826 A.2d 831 (Pa. 2003)] and the matter *sub judice*, where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA[6] review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

**Commonwealth v. Holmes**, 79 A.3d 562, 563-64 (Pa. 2013) (citation and footnotes omitted).

Instantly, Appellant failed to raise his ineffectiveness claims for consideration by the trial court and, moreover, did not knowingly waive his right to seek PCRA review. **See id.** We agree with the trial court that this issue should be dismissed without prejudice for Appellant to raise any ineffective assistance of counsel claim in a first PCRA petition. **See** Trial Ct. Op. at 11.

---

[6] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

Absent consideration, "the claims regarding trial counsel's ineffectiveness will be dismissed without prejudice." *See Grant*, 813 A.2d at 739. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2015