J-S30010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DYREL STEELE | |
| Appellee | No. 1080 EDA 2014 |

Appeal from the Order Entered March 10, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014122-2012

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:                      **FILED JULY 14, 2015**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, granting the motion of Appellee, Dyrel Steele, to suppress evidence obtained following his arrest for drug offenses.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows.

---

[1] Pursuant to Pa.R.A.P. 311(d), the Commonwealth certified in good faith in its notice of appeal that the suppression order substantially handicapped or terminated the prosecution.  Accordingly, this appeal is properly before us for review.  *See Commonwealth v. James*, 620 Pa. 465, 69 A.3d 180 (2013) (reiterating Commonwealth has absolute right of appeal from interlocutory suppression order, when Commonwealth certifies in good faith that suppression order has terminated or substantially handicapped prosecution); *Commonwealth v. Cosnek*, 575 Pa. 411, 836 A.2d 871 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion or exclusion of Commonwealth's evidence).

The Commonwealth presented one witness, Scott Schweizer, a police officer of sixteen (16) years' experience with eight years on the Narcotics Strike Force, now working in the 24th District. He had over 100 narcotics arrests and extensive narcotics training in the care and packaging of drugs.

Officer Schweizer testified that on August 3, 2012, at 6:45 p.m., in the area of 700 East Clearfield Street, he and his partner, Police Officer Pross, were in full uniform traveling in an unmarked police vehicle. When the police vehicle stopped at a red light, Officer Schweizer saw [Appellee] in the front passenger seat of a parked car with a female driver sitting behind the wheel. Through the windshield of this parked vehicle, Officer Schweizer saw [Appellee] maneuver an unknown object in his hands that "appeared to be something the size of a tennis ball or racquetball." However, Officer Schweizer stated he could not actually see what was in [Appellee's] hand. The officer believed he and [Appellee] made eye contact and [Appellee] then tried to conceal himself and the contents of his hand.

At this point, the police officers pulled over and approached [Appellee's] vehicle. Police Officer Schweizer made contact with [Appellee] and requested [Appellee] lower his window. [Appellee] complied and inquired, "What the fuck? What the fuck?" Officer Schweizer described [Appellee's] conduct as "fidgety" and "excited" indicating he was looking around, leaning forward with his hand, nervous, and sweaty. Officer Schweizer testified he saw a bulge in [Appellee's] right pocket that again looked like [a] tennis or racquetball, which he believed to be narcotics, as well as a black plastic bag on the floor of the vehicle.

The police officer commanded [Appellee] out of the car. A pat down was performed and Officer Schweizer felt what he believed to be narcotics. Immediately thereafter, Officer Schweizer recovered the black plastic bag from the floorboard of the car which also contained narcotics. Officer Schweizer further testified that at no point did he believe [Appellee] had a weapon.

(Suppression Court Opinion, filed February 4, 2015, at 1-2) (internal

citations to the record omitted).

On December 4, 2012, the Commonwealth filed a criminal information charging Appellee with possession of a controlled substance and possession of a controlled substance with intent to deliver. On January 24, 2013, Appellee filed a suppression motion, asserting Officer Schweizer "stopped [Appellee], while [Appellee] was lawfully sitting as a passenger in a parked car." (Suppression Motion, filed 1/24/13, at 1). Appellee argued Officer Schweizer conducted an illegal seizure and search, "and the ultimate recovery of the narcotics was done in violation of [Appellee's] constitutional rights." (*Id.*) Appellee concluded the court should suppress all evidence obtained as result of the result of the illegalities. The court conducted a suppression hearing on March 10, 2014. Immediately following the hearing, the court granted Appellee's suppression motion.

The Commonwealth timely filed a notice of appeal on April 9, 2014. That same day, the Commonwealth filed a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

The Commonwealth raises one issue for our review:

> WHERE AN EXPERIENCED OFFICER IN AN AREA KNOWN FOR DRUG TRAFFICKING APPROACHED [APPELLEE], WHO WAS IN THE PASSENGER SEAT OF A PARKED, RUNNING CAR, LOOKING AT AN OBJECT IN HIS HAND THAT THE OFFICER COULD NOT SEE; [APPELLEE] MADE EYE CONTACT WITH THE OFFICER AND THEN SLUMPED DOWN IN HIS SEAT AND TRIED TO CONCEAL THE OBJECT IN HIS HAND; THE OFFICER SAW A TENNIS BALL SIZED BULGE IN [APPELLEE'S] POCKET; [APPELLEE] WAS SWEATING, NERVOUS, MOVING AROUND IN HIS SEAT, AND REACHED

FORWARD SEVERAL TIMES TOWARDS A BLACK PLASTIC BAG ON THE FLOOR; AND [APPELLEE] CURSED AT THE OFFICER, DID THE [SUPPRESSION] COURT ERR IN HOLDING THAT THE OFFICER LACKED REASONABLE SUSPICION TO STOP AND FRISK [APPELLEE] FOR WEAPONS?

(Commonwealth's Brief at 4).

When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. As long as there is some evidence to support them, we are bound by the suppression court's findings of fact. Most importantly, we are not at liberty to reject a finding of fact which is based on credibility.
>
> The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (internal citations and quotation marks omitted).

On appeal, the Commonwealth contends Officer Schweizer, an experienced narcotics officer, observed Appellee inside a parked vehicle in a high-crime area. The Commonwealth asserts Appellee slouched in his seat and attempted to hide from the officer after the two made eye contact. The Commonwealth claims Appellee appeared nervous, he fidgeted and cursed while interacting with Officer Schweizer, and Appellee repeatedly reached

toward the plastic bag on the floor in front of him. Under these circumstances, the Commonwealth argues Officer Schweizer possessed reasonable suspicion that Appellee was engaged in criminal activity. Further, the Commonwealth submits Appellee's suspicious behavior justified the officer's decision to conduct a pat-down search for weapons. The Commonwealth concludes the court should have denied Appellee's suppression motion on these bases. We disagree.

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

*Goldsborough, supra* at 305 (quoting *Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)).

"A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond." *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (quoting *Commonwealth v. DeHart*, 745 A.2d 633,

636 (Pa.Super. 2000)).

> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest.

> \* \* \*

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot.

> \* \* \*

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Jones, supra* at 116 (internal citations omitted).

> Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (quoting *Commonwealth v. Conrad*, 892 A.2d 826, 829 (Pa.Super. 2006), *appeal denied*, 588 Pa. 747,

902 A.2d 1239 (2006)) (internal citations and quotation marks omitted).

"In these matters, our initial inquiry focuses on whether the individual in question has been legally seized." **Commonwealth v. Coleman**, 19 A.3d 1111, 1116 (Pa.Super. 2011).

> To guide the crucial inquiry as to whether…a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

**Commonwealth v. Downey**, 39 A.3d 401, 405 (Pa.Super. 2012), *appeal denied*, 616 Pa. 657, 50 A.3d 124 (2012) (quoting **Coleman, supra** at 1116). "If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons." **Commonwealth v. Preacher**, 827 A.2d 1235, 1239 (Pa.Super. 2003).

Instantly, on August 3, 2012, Officer Schweizer and his partner were on patrol near 700 East Clearfield Street. The officers were in full uniform, riding in an unmarked car. Officer Schweizer characterized the area as a "residential neighborhood" with "three, four, known drug corners…." (**See**

N.T. Suppression Hearing, 3/10/14, at 7-8.) Officer Schweizer estimated he had made one hundred arrests for narcotics offenses in the area over a sixteen-year period.

At approximately 6:45 p.m., Officer Schweizer first observed Appellee, who was in the passenger's seat of a parked vehicle. An unidentified female was in the driver's seat. Officer Schweizer described Appellee's behavior as follows:

> I was making my observations through my side window, which isn't tinted. Looking into the vehicle that [Appellee] was in through the front windshield, I observed [that Appellee] appear[ed] to be examining something in his hand, looking at it. I could see him maneuver his body to [place] that item into his pocket. Again, we were still in traffic.
>
> At this point, I made eye contact with [Appellee], meaning we were looking at each other. At that point, [Appellee] started to, in my opinion, conceal himself. He started to slouch down and maneuver in the passenger's seat to a point where at one time I completely couldn't see his body whatsoever.

(*Id.* at 9-10). Officer Schweizer elaborated on the object in Appellee's hand, explaining, "I couldn't see fully what was in his hand, but the way his hand was opened, it appeared…to be something of the size of a tennis ball…." (*Id.* at 10).

Officer Schweizer stated Appellee's "mannerisms after we made eye contact" raised his suspicions. (*Id.* at 16). Specifically, Appellee's attempt to conceal himself troubled the officer:

> [Appellee] first leaned…like slouching down. Like you

> would go down a sliding board. And then he came back up and then fully concealing himself, leaning toward the driver's side where I couldn't see him anymore.

(*Id.*) Consequently, Officer Schweizer and his partner exited their patrol car and approached Appellee's vehicle. Officer Schweizer went to the passenger's side and his partner stayed on the driver's side. Officer Schweizer asked Appellee to roll down the passenger's side window. (*Id.* at 18).

Officer Schweizer emphasized that Appellee's act of slouching in his seat aroused the officer's suspicion, which prompted his further investigation. Appellee was effectively seized when the officers stood directly outside his vehicle and asked him to roll down the window. Under these circumstances, a reasonable person would not think he was free to leave the scene. *See Downey, supra*. Therefore, Officer Schweizer's interaction with Appellee constituted a "seizure" that required reasonable suspicion. *Id.*

Here, the suppression court correctly determined:

> There is no evidence of a traffic violation, or vehicle stop, only Officer Schweizer's observations of [Appellee's] behavior. Based on Officer Schweizer's observations, at 6:45 p.m. in the summer, [Appellee] maneuvered something in his hands that looked like a [ball], and then upon making eye contact with [the officer], slouched down in his seat. This combination of actions [does] not give rise to reasonable suspicion that there was criminal activity afoot. Officer Schweizer had no reason to stop [Appellee]…and…anything [discovered] after should be suppressed as fruit of the poisonous tree.

(**See** Suppression Court Opinion at 4.) We agree and emphasize Officer Schweizer's testimony lacked any specific observations to link the object in Appellee's hand, or his slouching in his seat, to any type of criminal activity. Officer Schweizer could not identify the object or even see its color. (**See** N.T. Suppression Hearing at 17.) The record supports the court's decision that the officer lacked reasonable suspicion under these circumstances. **See Jones, supra**. Accordingly, we affirm the order granting the suppression motion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2015