J-S36012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SIDNEY WHITE, | : | |
| | : | |
| Appellant. | : | No. 3146 EDA 2017 |

Appeal from the Judgment of Sentence, August 14, 2017,
In the Court of Common Pleas of Delaware County,
Criminal Division at No(s):  CP-23-CR-0007275-2016.

BEFORE:  GANTMAN, P.J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED AUGUST 24, 2018**

Sidney White appeals from the judgment of sentence imposed after a jury convicted him of possession of a controlled substance and possession of drug paraphernalia.[1]  In his sole issue raised on appeal, he challenges the trial court's denial of his suppression motion.  After careful review, we affirm.

We enumerate the trial court's factual findings made at the conclusion of the suppression hearing as follows:

> 1. Lieutenant Richard Gibney is employed by the Darby Borough Police as a Lieutenant in the anti-crime unit.  He has been a police officer with Darby Borough since 1987.
>
> 2. In the evening of March 29th, 2016 at approximately 11:10 p.m. he received information regarding drug sales in the area of the Wishing Well bar.  The call came from Officer [Stacey] Rucker, a sworn police officer with the

_____

[1] 35 P.S. §§ 780-113(a)(16), and 780-113(a)(32), respectively.

Borough of Darby, who was working in an undercover capacity at that time.

3. Officer Rucker informed Lieutenant Gibney that one of the individuals she had been purchasing drugs from that evening was leaving the Wishing Well bar. Officer Rucker gave Lieutenant Gibney a description of that individual as a black male wearing a black coat with grey sleeves.

4. In response to that information, Lieutenant Gibney observed a black male fitting that description leaving the Wishing Well bar parking lot. Lieutenant Gibney waited until the suspect walked across 6th and Main Streets where he then pulled his vehicle up beside [the suspect] and stopped him. The suspect was later identified as [White]. Lieutenant Gibney was able to identify [White] as the person Officer Rucker described because he was the only one in the area that fit Officer Rucker's description.

5. Lieutenant Gibney exited his vehicle and approached [White] from the front. As Lieutenant Gibney walked over to [White] his badge was clearly visible to [White].

6. [White] began reaching into his pockets and Lieutenant Gibney told him to stop. Lieutenant Gibney then asked [White], "are you holding." In street slang, "are you holding" means are you in possession of drugs. [White's] response to Lieutenant Gibney's question was "yes," indicating he was in possession of drugs.

7. After [White] said he was holding, Lieutenant Gibney recovered drugs out of his pockets. [White] was then taken into custody.

Trial Court Opinion, 4/18/17, at 1-3 (citations omitted).

Relevant to the present appeal, another police officer transported White to the police station. After doing so, that officer checked his transport van and discovered two clear baggies of cocaine in the backseat where White had been sitting. The transport van had not had anyone in it prior to White, and,

as per protocol, the van had been checked earlier that day. At that time, the officer found nothing was inside it.

On January 5, 2017, White filed a motion to suppress evidence, including his statements to the police, and the drugs found on his person and in the police van. Within this motion, White averred that he "was stopped, detained, and interrogated" by the police "without reasonable suspicion that [he] was involved in criminal activity and without observation of unusual conduct." White further averred the police "searched and transported [him] subsequent to an unlawful investigation detention [sic]." Omnibus Motion, 1/5/17, at 3-4.

The trial court held an evidentiary hearing on February 24, 2017. Lieutenant Gibney was the only witness to testify. At the hearing's conclusion, the trial court took the matter under advisement. By order and opinion filed on April 18, 2017, the trial court denied the suppression motion. Thereafter, the trial court permitted the Commonwealth to consolidate this case with charges filed against White in connection with his two undercover sales to Officer Rucker in December 2015.[2] Following a two-day trial, the jury convicted White of the above charges. On August 14, 2017, the trial court sentenced White to an aggregate term of three years of probation. This appeal follows. Both the trial court and White have complied with Pa.R.A.P. 1925.

_____

[2] At a separate docket, a jury convicted White for these drug sales. White also has filed an appeal from the judgment of sentence imposed in that case. *See Commonwealth v. White*, No. 3144 EDA 2017.

- 3 -

White presents the following issue for our review:

1. Whether the court erred in failing to suppress the cocaine and paraphernalia that was seized from the police van and used to convict [White] in this matter since the recovery of the contraband was the direct result of the police detaining [White] without probable cause or reasonable suspicion which led to his arrest and presence in the van.

White's Brief at 7 (excess capitalization omitted).

Our scope of review limited to the testimony and other evidence presented at the suppression hearing. *See generally*, *In re L.J.*, 79 A.3d 1073 (Pa. 2013). Because the Commonwealth prevailed on this issue in the suppression court, we consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Johnson*, 33 A.3d 122, 124 (Pa. Super. 2011).

Our review of the suppression-hearing transcript supports the trial court's factual findings.[3] Thus, we must next determine whether the trial court's legal conclusions are correct. The trial court explained:

_____

[3] We note that, contrary to the trial court's finding, on cross-examination, Lieutenant Gibney testified that he did not recall Officer Rucker stating that she observed White sell drugs in the bar that night. Rather, she stated that she had bought drugs from him twice in December 2015, while working undercover, but did not know his identity. *See* N.T., 2/27/17, at 24.

[White] alleges there was no reasonable suspicion or probable cause for Lieutenant Gibney to stop him. . . .

The record in this case confirms that the contact between Lieutenant Gibney and [White] began as a mere encounter. A person is not seized when the police approach him or even ask him questions; that is a mere encounter which does not require any level of suspicion. **Commonwealth v. Smith**, 836 A.2d 5, 11 (Pa 2003) (mere approach of police followed by questioning is not a seizure); **In re D.M.**, 781 A.2d 1161, 1164 (Pa. 2001) (police may approach anyone in a public place to talk to him without any level of suspicion).

As the officers approached[4], [White] began reaching into his pockets. Lieutenant Gibney told him to stop [doing so]. Lieutenant Gibney then asked [White], "are you holding." In street slang, "are you holding" means are you in possession of drugs. [White's] response to Lieutenant Gibney's question was "yes," indicating that he was in possession of drugs. At this point the encounter became a lawful investigative detention, or **Terry** stop[.] Under the totality of the circumstances as viewed through the eyes of Lieutenant Gibney, a trained and credible police officer, Lieutenant Gibney, had a reasonable suspicion to continue his investigation.

A police officer may conduct a brief investigatory stop if he has a reasonable, articulable suspicion that criminal activity is afoot, **Terry v. Ohio**, 392 U.S. 1 (1968); he need not merely shrug his shoulders and allow a criminal to escape. **Adams v. Williams**, 407 U.S. 143, 145-46 (1972). Reasonable suspicion exists when, under the totality of the circumstances, an officer is "able to articulate something more than an 'inchoate and unparticularized hunch'" that criminal activity is afoot. **Alabama v. White**, 496 U.S. 325, 329 (1990), quoting **Terry v. Ohio**, supra. **See In the Interest of N.L.**, 739 A.2d 564, 567 (Pa. Super. 1999) (citation omitted) (reasonable suspicion is "less than a preponderance of the evidence but more than a hunch").

---

[4] Lieutenant Gibney approached White accompanied by his partner, Lieutenant Joseph Gabe, who was similarly dressed in plain clothes and exhibiting only a police badge. **See** N.T., 2/24/17 at 8-10.

Based on [White's] admission he was in possession of drugs, Lieutenant Gibney had probable cause to place [White] under arrest. Probable cause exists if "the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect had committed or is a committing a crime." **Commonwealth v. Colon**, 777 A.2d 1097, 1100 (Pa. Super. 2001). When determining whether probable cause exists, a court must view the circumstances in their totality "as they appeared to the arresting officer" rather than in isolation or through the eyes of "an average citizen." **Commonwealth v. Dennis**, 612 A.2d 1014, 1016 (Pa. Super. 1992). Moments later Lieutenant Gibney recovered drugs from [White's] pocket.

Once a valid arrest was made, the arresting officers, without a warrant, were permitted to search [White] incident to his arrest. The fact of a lawful arrest, standing alone, authorizes such a search. **Commonwealth v. Ventura**, [975 A.2d 1128, 11 (Pa. Super. 2009)].

Trial Court Opinion, 4/18/17, at 6-9. Our review supports the trial court's legal conclusions.

In arguing to the contrary, White first challenges the trial court's determination that his initial interaction with Lieutenant Gibney constituted a mere encounter. He avers that, "the Commonwealth failed to establish the necessary probable cause to effect the initial stop that led directly to his arrest and placement in the van." White's Brief at 12. White further argues that Lieutenant Gibney's initial interaction with him cannot be characterized as a "mere encounter" because they "detained" him "based upon the specific directive of the undercover agent, Officer Stacey Rucker[,]" to whom he had allegedly made two drug sales in December 2015. **Id.** According to White, because the Commonwealth did not call Officer Rucker to identify him at the

suppression hearing, "the essential link necessary to support the prosecution's theory of probable cause to detain [White] on the night of March 29, 201[6] was utterly absent from the record." *Id.* at 13. We disagree.

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). Once a criminal defendant files a motion to suppress evidence, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights. *Commonwealth v. Simonson*, 148 A.3d 792, 796 (Pa. Super. 2016).

Appellate courts in Pennsylvania "have long recognized that there are three levels of intrusion involved in interaction between members of the public and police." *Walls*, 53 A.3d at 892. This Court has compared and contrasted these levels of interaction as follows:

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of the citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention

become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Commonwealth v. Coleman*, 19 A.3d 1111, 1115-16 (Pa. Super. 2011) (citations omitted).

We begin our review with an initial inquiry focusing on whether White was "seized" during the initial interaction with Lieutenant Gibney. In determining whether a valid seizure has occurred, we evaluate all of the surrounding circumstances through an objective lens to ascertain whether a reasonable person would feel that he was free to leave. *Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000).

> In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Id.* at 890 (citation and footnote omitted).

Our review of the record refutes White's contention that that the initial approach and questioning by the police was more than a mere encounter. As found by the trial court, Lieutenant Gibney's approach and questioning of White did not constitute any sort of restraint of White's physical movement. "Both the United States and Pennsylvania Supreme Courts have held that the approach of a police officer followed by questioning does not constitute a seizure." *Coleman*, 19 A.3d at 1116 (citations omitted).

As in this case, in **Coleman**, this Court considered whether a street encounter between officers and a citizen was a mere encounter or an investigatory detention. In that case, police responded to a radio call of a robbery in progress, which included a description of the suspect. Upon arrival, the officers observed a man that fit the description in the report. The officer asked the defendant if he had a gun, to which the suspect responded "no," but at the same time put his hand in his pocket and began fumbling with an object. The defendant refused the officers' request to take his hand out of his pocket and a struggle ensued. The officers subsequently recovered two knives and arrested the defendant.

In Coleman's appeal, he argued, "that the initial approach and questioning by the police was an investigative detention that was not supported by reasonable suspicion." **Coleman**, 19 A.3d at 1116. Our Court held that the officer's approach qualified as a mere encounter and that the officer's request for Coleman to remove his hand from his pocket did not elevate the encounter to an investigative detention. **Coleman**, 19 A.3d at 1116–17. Thus, this Court concluded that the initial police-citizen interaction in **Coleman**, was a mere encounter. **Id**. at 1116-17.

Here, the officers did not seize White during the first moments of their initial interaction with him. The suppression-hearing transcript reveals that, the officers did not approach White in a threatening manner, did not use any means of physical force, or even utter the word "stop" or "police." **See** N.T., 2/24/17, at 11. They simply approached White and Lieutenant Gibney asked

him a question, which does not constitute a seizure. ***Commonwealth v. Smith***, 836 A.2d 5, 11 (Pa. 2003) (holding that a passenger was not seized "when police merely boarded a bus which was in the midst of a scheduled stop and posed questions to her").

Thus, the record in this case supports the trial court's conclusion that Lieutenant Gibney's initial interaction with White was a mere encounter.[5]

_____

[5] The fact that Officer Rucker did not identify him at the suppression hearing does not alter our conclusion. Nevertheless, we agree with the Commonwealth's alternative argument, which it made at the suppression hearing, that White's warrantless arrest was supported by probable cause under the "collective knowledge" doctrine. Most recently, in ***Commonwealth v. Yong***, 177 A.3d 876 (Pa. 2018), our Supreme Court addressed the specific issue of "whether an investigating officer's knowledge of facts sufficient to create probable cause to arrest may be imputed to a second officer, who arrests the suspect, when the two officers are working as a team, but there is no evidence the investigating officer with probable cause directed the officer to act." ***Yong***, 177 A.3d at 876-87. The high court, after discussing the different approaches employed in Pennsylvania, as well as various federal courts, answered this issue in the affirmative, based upon "the version of the collective knowledge doctrine" it discussed and adopted therein. ***Id.*** at 877. It defined this doctrine as follows:

> [W]e maintain that Pennsylvania adheres to the vertical approach of the collective knowledge doctrine, which instructs that an officer with the requisite level of suspicion may direct another officer to act in his or her stead. However, where, as here, the arresting officer does not have the requisite knowledge and was not directed to act, we hold the seizure is still constitutional were the investigating officer with probable cause or reasonable suspicion was working with the officers and would have inevitably and imminently ordered that the seizure be effectuated. . . . [W]e find this modified approach best balances the important interest of ensuring police efficacy and efficiency

Finally, the search that Lieutenant Gibney conducted of White was constitutionally valid. Based on White's admission that he was carrying drugs, Lieutenant Gibney had probable cause to place White under arrest. "Probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime." *Commonwealth v. Colon*, 777 A.2d 1097, 1100 (Pa. Super. 2001). Our precedent establishes that when a citizen admits that he is possession of an illegal drugs during the course of a mere encounter, probable cause arises, and a search incident to arrest is appropriate. *See e.g.*, *In re I.M.S.*, 124 A.3d 311, 317 (Pa. Super. 2015) (holding that a police officer had probable cause to arrest juvenile after juvenile admitted to possessing drugs, and thus the officer was authorized to conduct a search incident to arrest of juvenile's backpack).

_____

with protecting citizens' rights to be free from unconstitutional intrusions.

*Yong*, 177 A.3d at 889-90 (citation omitted).

In the instant case, there is no question that Officer Rucker was working with Lieutenant Gibney as part of a drug investigation, and that Officer Rucker possessed probable cause to arrest White based upon two prior drug sales he had made to her. Moreover, while Officer Rucker only asked Lieutenant Gibney to obtain White's identification, rather than order his arrest, the "collective knowledge" doctrine adopted in *Yong* holds that White's seizure was justified. *See id.*

- 11 -

Here, White responded in the affirmative when asked whether he was in possession of drugs. As such, the police had probable cause to believe that White was in possession of drugs, authorizing his arrest and search of his person. Consequently, the drugs seized were properly confiscated and admitted into evidence.

In sum, we conclude that the initial interaction between Lieutenant Gibney and White constituted a mere encounter, and probable cause developed in the course of lawful questioning, thus making the subsequent arrest and search of White constitutionally valid. Therefore, the trial court did not err when it allowed the admission of evidence (the drugs and paraphernalia) left in the police van following White's arrest.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: *8/24/2018*