COMMONWEALTH of Pennsylvania, Appellee

v.

Shawn COLEMAN, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 11, 2011.

Filed April 20, 2011.

Karl Baker, Public Defender and Robin Forrest, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Mary Huber, Assistant Dis-

trict Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., FREEDBERG, and PLATT *, JJ.

OPINION BY FREEDBERG, J.:

Shawn Coleman appeals from the judgment of sentence entered on September 21, 2009, by the Municipal Court of Philadelphia County. After review, we affirm.

The relevant facts and procedural history of this matter are taken from the trial court's March 11, 2010 opinion.

> On February 16, 2009, at approximately 4:20 p.m., Officer Joseph Fisher responded to a radio call reporting a robbery in progress near the area of 2100 West Jefferson Street in the City of Philadelphia. The radio call provided information that the robbery involved two black males wearing green hooded jackets with black coats over them. Upon arrival at the location, Officer Fisher observed [Appellant] fitting the back males['], black coat and green hoody description. [Appellant] was asked if he had a gun. Officer Fisher asked whether he had a gun because the radio call reported that the robbery was "point of gun and point of knife." [Appellant] responded "no," but at the same time fumbled with his hands in his pocket. Officer Fisher then asked [Appellant] to raise his hands. [Appellant] continued to keep his hands in his pocket "fumbling around." At this point, Officer Fisher brought [Appellant] to the police van. [Appellant] resisted and said "get the fuck off me" while continuing to wrestle with his hands in his pockets. [As the officer] attempted to pull [Appellant's] hands out of his pockets and place them against the police wagon a struggle ensued. During the struggle, [Appellant] struck the officer in his chest with his left and right shoulders while repeatedly telling the officer to "get the F-off of me." After the struggle ended, Officer Fisher patted [Appellant] down and felt a hard object in his pocket. Officer Fisher inquired what was in the pocket and [Appellant] told [him] he had knives. The officer subsequently recovered two knives from [Appellant]: a ten-inch knife with a four-inch blade and a "butterfly knife" described as [having] a blade "that actually hangs open, separates, and the blade comes swinging out of that particular handle."

> On cross-examination Officer Fisher stated that the initial complainant of the in-progress radio call disappeared by the time he arrived. As a result of the physical struggle with [Appellant], the officer received some minor cuts on his left hand. Officer Fisher explained that during the struggle his hand brushed up against the [Appellant] and against one of the knives ultimately recovered from [Appellant].

Trial Court Opinion 3/11/10 at 1–2 (internal citations omitted).

On September 21, 2009, Appellant litigated a motion to suppress in the Philadelphia Municipal Court. That court denied the motion, and the case proceeded immediately to trial in Municipal Court. At the close of the Commonwealth's case, the court granted Appellant's motion for a judgment of acquittal on the charge of recklessly endangering another person. Following the close of Appellant's case, the trial court found Appellant guilty of resisting arrest and prohibited offensive weapons. That same day, Appellant was sentenced to an aggregate term of fifteen (15) months probation.

---

* Retired Senior Judge assigned to the Superior Court.

Appellant filed a petition for a writ of certiorari to the Court of Common Pleas, challenging the denial of his suppression motion and the sufficiency of the evidence underlying the resisting arrest charge. Following argument on January 8, 2010, the petition was denied. The instant timely appeal followed. Appellant was ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a timely statement, and the Court of Common Pleas issued an opinion.

On appeal, Appellant raises three issues [1] for our review:

1. Appellant was stopped without reasonable suspicion where there was no evidence presented as to his proximity to the time or place of the robbery, and thus no basis for the lower court's assertion that he was stopped at the "exact location of the call," and where the police acted solely on an uncorroborated anonymous tip containing a general description that Appellant only partially fit.

2. The evidence was insufficient to convict Appellant of resisting arrest where his conduct did not pose a substantial risk of bodily injury to the officer, but rather constituted "mere non-submission" and where the underlying arrest was not lawful.

3. The evidence was insufficient to convict Appellant of prohibited offensive weapon, 18 Pa.C.S.A. § 908, where the Commonwealth failed to prove that either of the knives recovered from Appellant met the statutory definition of "offensive weapon."

Appellant's Brief at 3.

■■■ When we review a ruling on a motion to suppress, we must determine whether the record supports the lower court's factual findings and the "legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Holton*, 906 A.2d 1246, 1249 (Pa.Super.2006) (citation omitted), *appeal denied*, 591 Pa. 697, 918 A.2d 743 (2007). As the trial court in the instant matter found for the prosecution, we will consider only the testimony of the prosecution's witnesses and any uncontradicted evidence supplied by the defense. *Id.* If the evidence supports the trial court's factual findings, we may reverse only if there is a mistake in the legal conclusions drawn by the suppression court. *Id.*

■■■ This Court has held that there are three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super.2005).

A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.

In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically

---

1. We have reordered the issues in Appellant's brief.

speaking, the functional equivalent of an arrest.

*Id.* (citation omitted).

■ In these matters, our initial inquiry focuses on whether the individual in question has been legally seized.

To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in the view of all surrounding circumstances, a reasonable person would believe that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained; in making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Strickler,* 563 Pa. 47, 757 A.2d 884, 889–90 (2000) (citations omitted).

Appellant argues that the initial approach and questioning by the police was an investigative detention that was not supported by reasonable suspicion. We disagree. At the suppression hearing, Officer Fisher testified that he "stopped" Appellant and asked him if he had a gun. Appellant said, "no," but began fumbling in his pocket. Concerned for his safety, Officer Fisher asked Appellant to raise his hands, but Appellant failed to comply and kept "fumbling" in his pocket. At that point, Officer Fisher attempted to bring Appellant over to the police van.

■ Appellant argues that because Officer Fisher said that he "stopped" Appellant, it means he was legally seized. However, the context of the statement indicates that Officer Fisher was using the word "stopped" in the sense of asking the person a question rather than in forcing the person to remain. Further, the question of whether or not a seizure occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged actions was taken." *Maryland v. Macon,* 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (internal citations omitted). Both the United States and Pennsylvania Supreme Courts have held that the approach of a police officer followed by questioning does not constitute a seizure. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (police can approach people at random, ask questions, and seek consent to search) (collecting case); *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual in the street or in another public place, by asking him is he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen"); *Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 11 (2003) ("the mere approach of police followed by police questioning ... does not amount to a seizure"); *In re D.M.,* 566 Pa. 445, 781 A.2d 1161, 1164 (2001) ("the police may approach anyone in a public place to talk to him, without any level of suspicion' "). Thus, the initial questioning of Appellant was a mere encounter.

■ Further, the fact that Officer Fisher told Appellant to take his hands out of his pockets did not turn the encounter into a seizure. This Court has stated that "if during a mere encounter, an individual on his own accord, puts his hands in his pocket, thereby creating a potential danger to the safety of a police officer, the officer

may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket. Such reaction by a police officer does not elevate the mere encounter into an investigative detention because the officer's reaction was necessitated by the individual's conduct." *Commonwealth v. Carter,* 779 A.2d 591, 594 (Pa.Super.2001); *see also Commonwealth v. Hall,* 713 A.2d 650, 653 (Pa.Super.1998) (the defendant was not seized when an officer asked him to remove his hands from his pockets; the defendant's refusal to comply escalated the situation into one where the totality of the circumstances justified a stop and frisk), *rev'd on other grounds,* 565 Pa. 92, 771 A.2d 1232 (2001). Thus, Appellant was not seized until Officer Fisher grabbed his arm and tried to move him to the police car.

■ Officer Fisher sought to question Appellant in response to a police radio call of a robbery in progress. Officer Fisher drove to the location of the robbery and observed Appellant who was a black male of medium height wearing a green hooded jacket, with a black coat over it.[2] The robbery was described as being at gun point and knife point. The combination of the description of robber along with Appellant's refusal to remove his hand from his pocket and his "fumbling" in that pocket was sufficient to justify an investigative detention and protective frisk of Appellant. *See Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153, 1158 (2000) (suspect's suspicious behavior in response to police presence, combined with placing his hand in his pocket was sufficient to justify restraining suspect's hand and conducting a protective frisk); *Hall, supra.* Thus, the trial court

did not err in denying Appellant's motion to suppress.

■ Appellant claims that the evidence is not sufficient to sustain his convictions for resisting arrest and prohibited offensive weapon. Our standard for reviewing the sufficiency of the evidence is well settled.

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing

---

**2.** Appellant's arguments that the record did not demonstrate that Officer Fisher found Appellant at the scene of the robbery and that Appellant only partially matched the description of the robber are not persuasive. Officer Fisher testified that at 4:20 p.m. he responded to a radio call regarding a robbery in progress by driving to that location, where he observed Appellant who was wearing clothing matching the description of the robber. N.T. 9/21/09 at 4–9.

a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Bostick,* 958 A.2d 543, 560 (Pa.Super.2008) (quoting *Commonwealth v. Smith,* 956 A.2d 1029, 1035–36 (Pa.Super.2008)).

■ A person is guilty of resisting arrest if he or she, "with the intent of preventing a public servant from effecting a lawful arrest[3] or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa. Cons.Stat. Ann. § 5104. Officer Fisher testified that when he attempted to remove Appellant's hand from his pocket Appellant struggled with him, striking him with his left and right shoulders, while cursing and telling Officer Fisher to get off of him. N.T. 9/21/09 at 9, 11. This evidence was sufficient to sustain the conviction for resisting arrest. *See Commonwealth v. Stevenson,* 894 A.2d 759, 775 (Pa.Super.2006) (evidence was sufficient to sustain conviction for resisting arrest where appellant struggled with police to extricate himself from an investigatory detention); *Commonwealth v. Jackson,* 907 A.2d 540, 546 (Pa.Super.2006) (evidence sufficient to sustain conviction for resisting arrest, where, after kicking officer, appellant spit on him); *Commonwealth v. Clark,* 761 A.2d 190, 193–94 (Pa.Super.2000) (evidence sufficient to sustain conviction for resisting arrest where appellant "took a fighting stance," forced the police to chase him, and engaged in a struggle during which the officer had to roll him onto the ground to arrest him), *appeal denied,* 565 Pa. 636, 771 A.2d 1278 (2001) (table); *Commonwealth v. Wertelet,* 696 A.2d 206, 211 (Pa.Super.1997) (evidence sufficient to sustain conviction for resisting arrest where appellant kicked police officer in the shin). Thus, we find that this claim lacks merit.

■ Appellant also claims that the evidence was insufficient to sustain his conviction for prohibited offensive weapon. This claim is waived as it was raised for the first time in Appellant's Pa.R.A.P. 1925(b) statement.[4] Appellant argues that Pa.R.Crim.P. 606(A)(7) provides that a sufficiency of the evidence claim may be raised for the first time on appeal. While the Rule does so provide, this is Appellant's second appeal. Appellant waived the issue by failing to raise it on his initial appeal to the Court of Common Pleas.

Appellant was tried and convicted in the Philadelphia Municipal Court. Pennsylvania Rule of Criminal Procedure 1006(1)(a) provides that a defendant convicted in Philadelphia Municipal Court has the right to request either a trial *de novo* or file a

---

**3.** Appellant claims that the arrest was not lawful. However, that argument is entirely premised on his meritless claim that Officer Fisher lacked reasonable suspicion for the protective frisk.

**4.** Appellant argues that the claim was raised in his closing argument at trial. We have reviewed the closing argument and the claim was not raised. Rather, it appears that Appellant conceded the sufficiency of the evidence to sustain the conviction, asking the trial court to find him guilty only of the possession charge. N.T. 9/21/09 at 28.

petition for a writ of certiorari with the Philadelphia Court of Common Pleas. This Court has held that when a defendant files a petition for a writ of certiorari, the Philadelphia Court of Common Pleas sits as an appellate court. *Commonwealth v. Rosario,* 419 Pa.Super. 481, 615 A.2d 740, 741 (1992) (a petition for a writ of certiorari is an appeal to the Court of Common Pleas, where that court sits as an appellate court); *Commonwealth v. Frazier,* 324 Pa.Super. 334, 471 A.2d 866 (1984) (a writ of certiorari has "the quality of a true appeal"); *Commonwealth v. Dincel,* 311 Pa.Super. 470, 457 A.2d 1278 (1983) (on writ of certiorari, the Court of Common Pleas functions as an appellate court). While Appellant could have raised his sufficiency of the evidence claim for the first time in his petition for a writ of certiorari, he cannot, having failed to raise it at the first appellate level, raise it now. Pa. R.A.P. 302(a) (issues cannot be raised for the first time on appeal). Thus, this claim is waived.

Judgment of sentence **AFFIRMED.** Jurisdiction **RELINQUISHED.**