J-S69033-17

2018 PA Super 183

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| TAREEK ALQUAN HEMINGWAY | : | No. 684 WDA 2017 |

Appeal from the Order March 31, 2017
In the Court of Common Pleas of Blair County
Criminal Division at No(s):  CP-07-CR-0002262-2016

BEFORE:   BOWES, J., RANSOM, J., and STEVENS, P.J.E.*

DISSENTING OPINION BY STEVENS, P.J.E.:            **FILED JUNE 26, 2018**

Our society is seeing an alarming trend of law enforcement officers being attacked.[1]   Given the need to balance the protection of law enforcement officers with the constitutional rights of an individual under investigation, there may be reasonable differences of opinion in any given set of facts.

Here, respectfully, the police officers under the facts of this case had every right to approach and question Appellee, especially at 2 a.m., in a high crime area.  Considering these facts, when Appellee refused to remove his

---

[1] Within just a ten-day span, there were two such attacks in Luzerne County, Pennsylvania.  On May 31, 2018, in Edwardsville, several officers were attacked while investigating a violent domestic dispute.  *Officers allegedly assaulted after domestic in Edwardsville*, *Times Leader*, 6/1/18, https://www.timesleader.com/news/706303/officers-allegedly-assaulted-after-domestic-in-edwardsville.  On June 9, 2018, in Hazleton, a man on an all-terrain vehicle (ATV) attempted to run over a police officer who was attempting to offer him assistance.  *Man on ATV tries to run down officer who was there to help him*, *Standard Speaker*, 6/11/18, at 1. A simple internet search produces a plethora of attacks on law enforcement officers.

---

*   Former Justice specially assigned to the Superior Court.

hand from his pocket, the officers found it necessary to conduct a limited protective frisk of Appellee's person for their personal safety. There is nothing intrusive about the actions of the police officers in this case that justifies a suppression order.

Law enforcement officers should have the right to ask an individual to take his hand out of his pocket for *their safety*. We must remember that police officers in the line of duty are faced with on-the-spot decisions in a highly stressful environment. It is perfectly reasonable to give officers some leeway in asking an individual to remove their hands from their pockets during an interaction.

As the trial court erred in concluding that the police officers unlawfully seized Appellee by approaching him and subsequently asking him to take his hands out of his pockets to ensure their safety, I respectfully dissent.

A police officer does not need any level of suspicion to approach an individual and ask them questions. ***Commonwealth v. Baldwin***, 147 A.3d 1200, 1202–1203 (Pa.Super. 2016).

> Both the United States and Pennsylvania Supreme Courts have held that the approach of a police officer followed by questioning does not constitute a seizure. ***Florida v. Bostick***, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (police can approach people at random, ask questions, and seek consent to search) (collecting cases); ***Florida v. Royer***, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual in the street or in another public place, by asking him is he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen"); ***Commonwealth v. Smith***, 575 Pa. 203, 836 A.2d 5, 11 (2003) ("the mere approach

of police followed by police questioning ... does not amount to a seizure"); *In re D.M.*, 566 Pa. 445, 781 A.2d 1161, 1164 (2001) ("the police may approach anyone in a public place to talk to him, without any level of suspicion").

*Commonwealth v. Thomas*, 179 A.3d 77, 82 (Pa.Super. 2018) (quoting

*Commonwealth v. Coleman*, 19 A.3d 1111, 1117 (Pa.Super. 2011)).

Our courts have repeatedly held that an officer's request that an individual remove their hands from their pockets does not escalate a mere encounter to an investigative detention requiring reasonable suspicion.

> An officer is justified in insisting that a citizen not conceal his hands during an encounter with police; an officer may make this reasonable request to ensure his or her own protection in case that individual is armed.
>
> > This Court has stated that "if during a mere encounter, an individual on his own accord, puts his hands in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket. Such reaction by a police officer does not elevate the mere encounter into an investigative detention because the officer's reaction was necessitated by the individual's conduct." *Commonwealth v. Carter*, 779 A.2d 591, 594 (Pa.Super. 2001).
>
> *Coleman*, 19 A.3d at 1117 (quoting *Commonwealth v. Carter*, 779 A.2d 591, 594 (Pa.Super. 2001) (noting that the fact that the officer asked the appellant to take his hands out of his pockets did not turn the encounter into a seizure)). *See also Commonwealth v. Blair*, 860 A.2d 567, 573 (Pa.Super. 2004) (finding that interaction remained a mere encounter when an officer approached a parked car and asked its occupants to show their hands).

*Thomas*, 179 A.3d at 83.

During a mere encounter, however, an officer may recognize the need to conduct a protective frisk of an individual if he reasonably believes the person is armed and dangerous. This Court has held:

[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others[,] the officer may conduct a pat down search to determine whether the person is in fact carrying a weapon. *Terry* [*v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

*Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa.Super. 2011) (quotation marks omitted). Further, "the court must be guided by common sense concerns that *give preference to the safety of the police officer* during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." *Commonwealth v. Stevenson*, 894 A.2d 759, 772 (Pa.Super. 2006) (citation omitted) (emphasis in original).

In *Thomas*, police officers were on patrol when they received a report of a black male with a gun in a high crime area in Philadelphia. When the officers arrived at the reported location, they observed a black male, later identified as the appellee, walking eastbound on Greenway Avenue. After the officers circled the block in their patrol car four or five times, the officers observed the appellee repeatedly reverse his direction and look back at the officers each time they passed by.

- 4 -

Although the appellee did not meet the exact description outlined in the dispatch report, the officers believed the appellee's behavior was suspicious and approached him. Appellee had his hands in his pockets but refused the officers' request to remove them. At that point, the officers conducted a limited protective frisk of the appellee's person *for their personal safety*.

The **Thomas** Court reversed the lower court's decision to suppress the evidence and rejected its finding that the officers lacked the requisite suspicion to approach the appellee, ask him to show his hands, and conduct a brief protective frisk. **Thomas**, 179 A.3d at 84. First, the **Thomas** court found the officers' request for the appellee to remove his hands from his pockets did not escalate the encounter into an investigative detention. **See Coleman**, **supra**; **Blair**, **supra**. Second, the **Thomas** Court determined that the appellee's refusal to remove his hands from his pockets justified a brief protective frisk of his person for the officers' protection.

Specifically, this Court found that "[i]t was reasonable for [the officers] to infer that Appellee may have been armed and dangerous, given his refusal to show his hands and his evasive movements in response to police presence in an area specifically known for high levels of crime and violence." **Thomas**, 179 A.3d at 83-84. **See Commonwealth v. Hall**, 713 A.2d 650, 653 (Pa.Super. 1998), *rev'd on other grounds,* 565 Pa. 92, 771 A.2d 1232 (2001) (finding although that officer's request that the defendant to remove his hands from his pockets did not constitute a seizure, the defendant's persistence in

keeping his hands concealed escalated the encounter into one where the totality of the circumstances justified a frisk).

Similarly, in the instant case, the record shows when the officers first approached Appellee on foot, they asked Appellee to take his hand from his pocket *for their safety*. At this point, the interaction between Appellee and the officers remained a mere encounter, and the officer's request to see Appellee's hands did not turn the encounter into an investigative detention. ***See Thomas***, ***supra***; ***Coleman***, ***supra***; ***Blair***, ***supra***.

Thereafter, Appellee refused to comply with officers' request to remove his hand from his pocket. This suspicious behavior, along with the fact that the officers had encountered Appellee at approximately 2 a.m. in a high crime area, demonstrates that the officers were justified in attempting to perform a pat-down of Appellee *for their personal safety* as they reasonably believed that Appellee was armed and dangerous. ***See Thomas***, ***supra***; ***Hall***, ***supra***.

Moreover, I cannot agree with the Majority's assertion that the Officer Detwiler had no right to command Appellee to stop concealing his hand as "[a]ny potential danger in the interaction initiated by police was manufactured by Officer Detwiler himself." Majority, at 9. The Majority's position is unsupported by the aforementioned precedent, and its reliance on this Court's decision in ***Carter*** is misplaced. In ***Carter***, the officer pulled his firearm on the appellee and told him to remove his hand from his pocket; however, the officer admitted on cross-examination that he had initially told the defendant

to place his hand in his pocket. This Court questioned the validity of the officer's belief that the defendant was armed and dangerous:

> Since it was the officer who told Appellee to put his hand in his pocket, we find it absurd that the officer would then argue that he became concerned for his safety when Appellee complied with his directive. A police officer cannot for instance, ask an individual to pick up a gun lying on the floor, and then claim that he was afraid for his safety because the individual picked up the gun. A police officer is not permitted to create a dangerous situation and then use the self-created danger as the basis for escalating an encounter into a seizure.

*Carter*, 779 A.2d at 594. This Court found that the officer escalated the situation into an investigative detention when he reached for his weapon and ordered the appellee to show his hands.

Moreover, the *Carter* panel went on to clarify that its conclusion would have been different had the appellee put his hand in his pocket without being prompted by the officer. The *Carter* panel explained that the officer's response in reaching for his side arm and ordering the appellee to show his hands would not have escalated the encounter into an investigative detention as the officer would have reasonably feared for his safety as the appellee could have been retrieving a weapon from his pocket.

There is nothing in the record in the instant case to suggest the police officers directed Appellee to put his hands in his pockets. Thus, the decision in *Carter* does not support the Majority's conclusion.

In this same manner, I disagree with the Majority's suggestion that an officer has no right to ask an individual to remove his hands from his pockets

without escalating an interaction from a mere encounter to an investigative detention. Permitting an officer to request that an individual not conceal his hands during an interaction promotes officer safety and allows the officer to pursue the interaction with less apprehension of violence.

When an individual refuses to comply with a reasonable request to remove his hands from his pocket and the circumstances lead an officer to believe that the individual is armed and dangerous, the police officer should have the right to do a brief pat-down search of that individual for the *police officer's personal safety.* We should not create a policy that says otherwise.

As a result, consistent with the aforementioned precedent, Appellee's refusal to comply with the officer's request to refrain from concealing his hands in his pocket gave the officer reason to believe that Appellee could have a weapon and justified the subsequent protective frisk.

Further, if this Court were to uphold the constitutionality of the frisk of Appellant's person, the officers were also justified in pursuing Appellee after he fled the scene. Our courts have held that a police officer's pursuit of a fleeing suspect constitutes a seizure under Article 1, Section 8 of the Pennsylvania Constitution, which provides broader protection than the Fourth Amendment of the United States Constitution. **Commonwealth v. Matos**, 543 Pa. 449, 461–62, 672 A.2d 769, 775–76 (1996); **California v. Hodari D.,** 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (holding that a police officer's pursuit of a fleeing suspect does not automatically trigger the protection of the Fourth Amendment). Therefore, "any items abandoned by

an individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop." ***Commonwealth v. Taggart***, 997 A.2d 1189, 1193 (Pa.Super. 2010) (quoting ***In re M.D.,*** 781 A.2d 192, 197 (Pa.Super. 2001)).

Appellee's unprovoked flight in a high crime area gave the officers reasonable suspicion to pursue and stop him.  Our Supreme Court has held that "unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a ***Terry*** stop under the Fourth Amendment."  ***In re D.M.***, 566 Pa. 445, 450, 781 A.2d 1161, 1164 (2001) (citing ***Illinois v. Wardlow***, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).[2]  Thus, the trial court erred in holding that the police lacked reasonable suspicion to justify their initial attempt to stop and frisk Appellee.[3]

For the foregoing reasons, I dissent.

---

[2]  To justify an investigative detention based a suspect's unprovoked flight in a high crime area, "the suspect must know he is running from law enforcement before a reasonable suspicion can attach." ***Commonwealth v. Washington***, 51 A.3d 895, 898 (Pa.Super. 2012).  There is no question that Appellee recognized the officers as law enforcement as they were in full uniform, arrived in a marked patrol car, and identified themselves as officers.

[3] Appellee's suppression motion solely alleged that the officers lacked reasonable suspicion to support their attempt to stop and frisk him.  Appellee does not challenge the propriety of the officers' search of his person.  Thus, it is not necessary to review this issue.  ***See Commonwealth v. Freeman***, 128 A.3d 1231, 1241–42 (Pa.Super. 2015) (reiterating that a suppression motion must "state[] specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof").