J-A27006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES MCCRAY | |
| Appellant | No. 3481 EDA 2019 |

Appeal from the Judgment of Sentence entered November 20, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0001296-2019

BEFORE: STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 9, 2021**

Appellant, James McCray, appeals from the judgment of sentence imposed in the Court of Common Pleas of Philadelphia County on November 20, 2019, following Appellant's conviction of carrying a firearm on public streets in Philadelphia, 18 Pa.C.S.A. § 6108. Appellant contends the court erred by denying his motion to suppress. We agree and, therefore, vacate his judgment of sentence, reverse the suppression order, and remand.

As this Court recently reiterated:

> When we review the ruling of a suppression court we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is

_____

[*] Retired Senior Judge assigned to the Superior Court.

support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

***Commonwealth v. Copenhaver***, 238 A.3d 509, 513 (Pa. Super. 2020) (quoting ***Commonwealth v. Hicks***, 208 A.3d 916, 925 (Pa. 2019) (citation omitted)). "Factual findings wholly lacking in evidence, however, may be rejected." ***Commonwealth v. Burnside***, 625 A.2d 678, 680 (Pa. Super. 1993) (citation omitted). "Our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." ***Copenhaver***, 238 A.3d at 513 (quoting ***Commonwealth v. Rapak***, 138 A.3d 666, 670 (Pa. Super. 2016) (alteration and additional citation omitted)).

Further:

Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa. Super. 2017) (quoting ***Commonwealth v. Jones***, 121 A.3d 524, 526-27 (Pa. Super. 2015) (alterations and additional citations omitted)).

In its Rule 1925(a) opinion, the suppression court summarized the facts and procedural history of this case as follows:

On January 16, 2019 around 8:00 p.m., Officer Williams, an officer for over nine years, and his partner responded to an armed robbery in progress call in the area of 1700 Pointbreeze Avenue, a known area for gang and gun violence. (Motion Volume 1, May 8, 2019, N/T p. 7-8). The police radio call described two males,

- 2 -

one wearing all black and **the other wearing a greenish hoodie**.[1]  The officers were investigating the area and, around 15 minutes after the initial police radio call, drove pas[t] two males, one wearing all black and **the other wearing a yellow shirt with a yellow hoodie**.  *Id.* at 9-10.  The officers drove back around and approached the two males, one of whom is the Appellant.  *Id.*  **When Officer Williams rolled down the window of the passenger side of his marked patrol car to speak with the Appellant and the other male[,] both men fled**.[2]  *Id.* at 11.  Officer Williams witnessed Appellant toss a black handgun onto the side of the street while attempting to run from [the] officers.  *Id.*  On May 8, 2019, this court heard Appellant's motion to suppress the gun recovered and held the motion under advisement.  On May 14, 2019, this court denied Appellant's motion to suppress and recused itself from hearing the case further.  On November 13, 2019, the trial court found Appellant guilty of 18 [Pa.C.S.A.] § 6108, carrying firearms publicly in Philadelphia.  On November 20, 2019, the trial court sentenced Appellant and Appellant appealed this court's denial of his motion to suppress on December 17, 2019.[3]

Rule 1925(a) Opinion, 2/18/20, at 1-2 (emphasis added) (some capitalization omitted).

Appellant asks this Court to consider one question:

Did not the trial court err in denying the motion to suppress physical evidence, insofar as appellant was stopped without reasonable suspicion, and thus any abandonment of items later seized was the product of the initial illegal stop?

_____

[1] The police radio call was prompted by a 911 call.  N.T., Suppression Hearing, 5/8/19, at 20.  Officer Williams admitted he did not know the identity of the caller.  *Id.*

[2] The male described as wearing all black was not apprehended.

[3] Appellant complied with the trial court's order to file a Rule 1925(b) statement of matters complained of on appeal.  Because the sole matter raised in the statement related to denial of Appellant's suppression motion, the trial judge referred the matter to the suppression court for issuance of a Rule 1925(a) opinion.

- 3 -

Appellant's Brief at 3.

As noted above, our standard of review is limited to determining whether the trial court's findings are supported by the record and whether its legal conclusions drawn from those facts are correct. Portions of the Rule 1925(a) opinion appearing above in boldface type reflect that, according to the flash report, one of two persons involved in a robbery was wearing a green hoodie, whereas Appellant was wearing a yellow shirt and yellow hoodie. Our review of Officer Williams' testimony on direct examination confirms that fact. *See* N.T., Suppression Hearing, 5/8/19, at 9-10. However, later in his direct examination, Officer Williams testified that the flash information indicated that "the number two male was wearing a greenish hoodie or jacket with a beard. It was no hoodie." *Id.* at 17. Officer Williams explained that when he encountered Appellant, Appellant "was wearing a yellow hoodie and blue jeans with tan boots and beard." *Id.* at 18.

On cross-examination, Officer Williams could not recall if the flash information indicated a hoodie or a jacket, but "believe[d] it was a jacket." *Id.* at 18. Officer Williams was asked, "So the flash went out for a green jacket, right, and you said my client was wearing a yellow hoodie, fair to say?" The officer answered, "He was." *Id.*

More importantly, on direct examination, Officer Williams, who was in the passenger seat of the police car, explained:

I put down the window in the passenger seat and I asked [Appellant] to stop at that time. They both ran southbound [on] Pointbreeze and that's when I observed [Appellant] had in his right hand down [*sic*] and pumping with his left and when he got to the corner of McClellan and Pointbreeze I observed him toss a black handgun onto the highway [and] him and that male continue to run westbound on McClellan Street. That's when I exited the vehicle.

*Id.* at 11. On cross-examination, the following exchange took place:

Defense counsel: When you say you ordered them to stop you told them to stop don't move, something to that effect?

Officer Williams: I said something along the lines of **yo, stop, don't move**.

Defense counsel: Okay. You don't remember exactly what it was but you ordered for them [to] not go anywhere, correct?

Officer Williams: Correct.

Defense counsel: At that point **after you ordered them to stop**[] then both [] the men run?

Officer Williams: Yes.

*Id.* at 27 (emphasis added).

As the excerpts from the transcript indicate, the evidence in two important regards does not support the suppression court's factual summary. First, the flash information did not positively indicate one of the males was wearing a "green hoodie," rather the flash may have specified it was a green *jacket*. Regardless, the flash did not identify the yellow hoodie Appellant was wearing. Second, Officer Williams did not simply roll down his window to speak with Appellant and *ask* him and the other male to stop. Rather, he

*ordered* them to stop with language "along the lines of yo, stop, don't move." Only then did Appellant and his companion flee.

Based on our review of the suppression hearing transcript, we find the record does not support the suppression court's findings with respect to Appellant's clothing matching the description provided in the flash. Further, there was no suggestion Appellant was acting suspiciously, nor did he attempt to run away at any time before Officer Williams ordered him to "stop, don't move." Because the court's factual findings in these regards are lacking in evidence, we may reject them. *Burnside*, 625 A.2d at 680.

Again, Appellant contends the suppression court erred in denying his motion to suppress because the officers lacked reasonable suspicion to stop and frisk him. In *Commonwealth v. Hemingway*, 192 A.3d 126 (Pa. Super. 2018), this Court reiterated that:

> [t]here are three types of encounters between law enforcement officials and private citizens. A "mere encounter" need not be supported by any level of suspicion but carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion and subjects the suspect to a stop and a period of detention, but it does not have the coercive conditions that would constitute an arrest. The courts determine whether reasonable suspicion exists by examining the totality of the circumstances. An arrest, or "custodial detention," must be supported by probable cause.

*Id.* at 129 (quoting *In re J.G.*, 145 A.3d 1179, 1185 (Pa. Super. 2016) (citations omitted)). Here, the suppression court recognized that "[a] person is considered detained for investigatory purposes when 'a reasonable person would have believed he was not free to leave.'" Rule 1925(a) Opinion,

2/18/20, at 2 (quoting **Commonwealth v. Gould**, 187 A.3d 927, 936 (Pa. Super. 2018)).

The court recognized that "[r]easonable suspicion, the level of suspicion required to detain an individual, requires an officer to reasonably believe criminal activity is occurring." **Id.** at 3. Further, "the totality of circumstances" must be considered to determine whether an officer had reasonable suspicion. **Id.** (citing **In the Interest of A.A.**, 195 A.3d 896, 904 (Pa. 2018)). The court then cited cases supporting the proposition that flight in a high crime area can justify a **Terry**[4] stop and that reasonable suspicion exists if an individual flees upon recognizing police presence or upon being confronted by police. **Id.**

With respect to the case at hand, the court considered the experience of Officer Williams and his knowledge of the area as a high crime area. **Id.** at 4. Further, "Appellant was walking with another individual wearing all black and the description of one of the suspects was an individual wearing all black." **Id.** While rejecting the notion that reasonable suspicion requires a description to match perfectly, the court nevertheless determined that Appellant's location "combined with the description provides support to reasonable suspicion." **Id.** The court then turned its attention to "the last factor creating reasonable

---

[4] **Terry v. Ohio**, 392 U.S. 1 (1968) (permitting a police officer to effect a precautionary seizure where the police have a reasonable suspicion that criminal activity is afoot).

suspicion, flight." ***Id.*** The court noted that the officers involved were not undercover and that Appellant was aware they were officers before he fled. The court concluded that "Appellant's attempted flight from uniformed officers, the location of the Appellant, and the close match to the description of the suspects, create enough factors for reasonable suspicion." Rule 1925(a) Opinion, 2/18/20, at 5.

The court misapprehended, or at least downplayed, the discrepancy between the flash description of a suspect wearing a green jacket rather than a yellow hoodie, ostensibly because Appellant's companion was wearing all black, matching the description of the other male. More importantly, the court disregarded that Officer Williams' command was "stop, don't move," and was given *before* Appellant fled the scene. While recognizing that a person is considered detained for investigatory purposes when "a reasonable person would have believed he was not free to leave," ***see id.*** at 2 (quoting ***Gould***, 187 A.3d at 936), the trial court failed to appreciate that Appellant could reasonably believe he was not free to leave when ordered to "stop, don't move." Moreover, it was only *after* Appellant fled that he discarded a handgun, a weapon neither officer observed prior to directing Appellant not to move. Because the causative factor leading to discarding of the handgun was Officer Williams' coercive action, the evidence abandoned by Appellant should be suppressed. ***See Commonwealth v. Matos***, 672 A.2d 769, 774 (Pa.

1996) (citing, *inter alia*, **Commonwealth v. Barnett**, 398 A.2d 1019 (Pa. 1979); **Commonwealth v. Jeffries**, 311 A.2d 914, 918 (Pa. 1973)).

We find merit in Appellant's contention that "[p]olice cannot stop people who are just walking down the street based on vague and inaccurate anonymous radio calls." Appellant's Brief at 21. The Commonwealth concedes as much, "based on the specific and narrow set of facts presented at the suppression court." Commonwealth Brief at 5. Noting it does not oppose Appellant's requested relief, "the Commonwealth agrees that the record does not adequately support the conclusion that the police had reasonable suspicion at the time [Appellant] was seized." ***Id.*** at 4.

We conclude the suppression court erred in denying Appellant's suppression motion because the record does not support its factual findings or the legitimacy of the inferences and legal conclusions the suppression court drew from those findings. Therefore, we vacate Appellant's judgment of sentence, reverse the order denying the suppression motion, and remand to the trial court for proceedings consistent with this decision.

Judgment of sentence vacated. Suppression order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/09/2021