J-A15004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                       :         PENNSYLVANIA
                                       :
           v.                          :
                                       :
                                       :
TYLER EDWARD HOLBEN           :
                                       :
          Appellant            :    No. 920 WDA 2021

Appeal from the Judgment of Sentence Entered July 8, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004461-2020

BEFORE:  BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:          **FILED: OCTOBER 18, 2022**

Tyler Edward Holben appeals from his July 8, 2021 judgment of sentence

of one year probation, which was imposed following his conviction for firearms

not to be carried without a license.  We affirm.

The trial court summarized the facts as follows:

On or about June 10, 2020, [at approximately 1:00 a.m.] Patrol
Sergeant Brian Turack received a dispatch 911 call regarding
individuals throwing bottles in a local McDonald's [Restaurant]
parking lot [in a known high-crime area].  The McDonald's is in
very close proximity to the municipal building [where] Sergeant
Turack [received the aforementioned call].  Upon arrival at the
McDonald's parking lot, Sergeant Turack observed Appellant
walking past the drive-thru of the McDonald's towards the
roadway.  Appellant was wearing a hooded sweatshirt with his
hood up in the late hours of the night on a humid and hot evening.
Sergeant Turack subsequently drove his vehicle towards Appellant
eventually stopping his vehicle in front of him.  Sergeant Turack
approached Appellant and asked if he could speak with him.
Appellant stated that he was just going home.  Sergeant Turack
then requested Appellant remove his hands from his pockets while
Appellant was speaking with him.  Appellant complied at first but

repeatedly put his hands back in his sweatshirt. Despite Sergeant Turack's repeated requests for Appellant to keep his hands out of his pockets while speaking with him, Appellant continued to put his hands in his pocket. Based upon Appellant's non-compliance to remove his hands from his pocket, Sergeant Turack performed a **Terry**[1] frisk for office safety. Immediately upon touching Appellant's waist area and pocket of his sweatshirt, Sergeant Turack felt what he knew to be a firearm.

Trial Court Opinion, 6/15/21, at 1-2 (cleaned up). Further investigation revealed that the gun was reported stolen in 2017.

Sergeant Turack charged Appellant with receiving stolen property and firearms not to be carried without a license. Appellant filed a motion to suppress the firearm on the grounds that Sergeant Turack lacked reasonable suspicion for either the investigative stop or the **Terry** frisk. The court denied the motion to suppress. Following a stipulated non-jury trial, the trial court convicted Appellant of carrying firearms without a license, acquitted him of receiving stolen property, and immediately imposed one year of probation.

Appellant filed a timely notice of appeal on August 6, 2021, and complied with Pa.R.A.P. 1925(b). He presents three issues for our review:

  I.   Whether the trial court erred in denying suppression where Sergeant Turack conducted an investigative detention of Appellant as soon as he ordered him: "Come over here[,]" but, at the precise moment of seizure, the officer lacked reasonable suspicion, based on specific and articulable facts, to believe that Appellant was engaged in criminal activity?

  II.  Assuming, *arguendo*, that Sergeant Turack did not seize Appellant based on the above-described circumstances, whether the trial court erred in denying suppression where

_____

[1] **Terry v. Ohio**, 392 U.S. 1 (1968).

Sergeant Turack conducted an investigative detention of Appellant as soon as he ordered him: "[P]ut your hands on the car[,]" but, at the precise moment of seizure, the officer lacked reasonable suspicion, based on specific and articulable facts, to believe that Appellant was engaged in criminal activity?

III. Assuming, *arguendo*, that the interaction between Sergeant Turack and Appellant was never unlawful, whether the trial court erred in denying suppression where Sergeant Turack conducted a **Terry** frisk of Appellant's person without reasonable suspicion, based on specific and articulable facts, to believe that he was presently armed and dangerous?

Appellant's brief at 5 (cleaned up).

As Appellant's arguments are inextricably intertwined and collectively relate to whether Sergeant Turack had "reasonable suspicion" to stop Appellant on the evening in question, this Court will address the arguments together. Our standard of review of an order denying suppression is well established:

In reviewing appeals from an order denying suppression, our standard of review is limited to determining whether the trial court's factual findings are supported by the record and whether its legal conclusions drawn from those facts are correct. When reviewing the rulings of a trial court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Our scope of review is limited to the evidence presented at the suppression hearing.

**Commonwealth v. Bowens**, 265 A.3d 730, 747 (Pa.Super. 2021) (cleaned up).

Preliminarily, we note that there are three different types of interactions between individuals and law enforcement. The first type of interaction is a "mere encounter," which does not require any suspicion of criminal activity by the officer. **Commonwealth v. Anderson**, 276 A.3d 282, 293-94 (Pa.Super. 2022) (*en banc*); **see also Commonwealth v. Adams**, 205 A.3d 1195, 1199-1200 (Pa. 2019). An individual is not required to stop or respond during a mere encounter, and as such, this interaction does not constitute a seizure by law enforcement. **Anderson**, **supra** at 293-94. The next level of interaction is an "investigative detention," which is a temporary period of custody, which requires that the officer have reasonable suspicion of criminal activity by the briefly seized individual. **Id**. The final type of encounter is a "custodial detention," which is the functional equivalent of arrest and requires an officer to have probable cause. **Id.** Both investigative and custodial detentions constitute seizures. In order to determine whether a seizure has occurred, courts apply the "free to leave test," which "requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." **Id**.

It is well-established that a police officer merely approaching an individual and asking questions does not, by itself, constitute a seizure. **See Commonwealth v. K. Thomas**, 179 A.3d 77, 82 (Pa.Super. 2018) (citing **Florida v. Bostick**, 501 U.S. 429, 434 (1991) (holding that police can

approach people at random, ask questions, and seek consent to search) (collecting cases); ***Florida v. Royer***, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual in the street or in another public place by asking him is (sic) he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen[.]"); ***Commonwealth v. Smith***, 836 A.2d 5, 11 (Pa. 2003) ("[T]he mere approach of police followed by police questioning … does not amount to a seizure"); ***In re D.M.***, 781 A.2d 1161, 1164 (Pa. 2001) ("[T]he police may approach anyone in a public place to talk to him, without any level of suspicion[.]")).

Furthermore, if "an individual on his own accord, puts his hands in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket." ***Commonwealth v. Coleman***, 19 A.3d 1111, 1117 (Pa.Super. 2011). While this type of reaction by an officer does not automatically transform a mere encounter into an investigative detention, that determination is a fact-specific inquiry and partially dependent on the timing of the request. ***Id***.; ***see also Commonwealth v. Hemingway***, 192 A.3d 126, 130 (Pa.Super. 2018).

In the matter *sub judice*, the suppression court determined that the interaction between Appellant and Sergeant Turack constituted a mere encounter and remained a mere encounter even after Appellant was asked to remove his hands from the center sweatshirt pocket. The suppression court

cited *K. Thomas*, *supra* at 82-83, for the proposition that a police officer is justified in insisting that an individual not conceal their hands during an encounter with police, and that such a request does not transform a mere encounter into an investigative detention. *See* Trial Court Opinion, 6/15/21, at 4. Specifically, the suppression court determined that, because Sergeant Turack did not turn on his overhead lights, command Appellant to stop, or threaten Appellant to comply, Appellant was free to leave. *Id*.

Appellant first argues that the suppression court erred when it held that the interaction between Sergeant Turack and Appellant was a mere encounter. Appellant contends that based upon the totality of the circumstances, once Sergeant Turack exited his vehicle and ordered Appellant to "come over here," after twice rebuffing Sergeant Turack, the encounter became an investigatory detention. *See* Appellant's brief at 24-36. We agree.

To determine whether a seizure by law enforcement occurred during an interaction between law enforcement and an individual, "courts conduct an objective examination of the totality of the surrounding circumstances." *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014). "The totality of the circumstances test is ultimately centered on whether the suspect has in some ways been restrained by physical force or show of coercive authority." *Commonwealth v. Luczki*, 212 A.3d 530, 543 (Pa.Super.2019) (quoting *Lyles*, *supra* at 302-03). No single factor is determinative as to whether a seizure occurred, rather it is an objective test as to "whether a reasonable person would have felt free to leave or otherwise terminate the encounter."

*Id*. This is a fact-specific inquiry that focuses upon the conduct of law enforcement and the setting of the interaction. *Id.*

Some factors in reviewing the totality of the circumstances include, but are not limited to, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Luczki*, *supra* at 543 (quoting *Commonwealth v. Hampton*, 204 A.3d 452, 457 (Pa.Super. 2019)). "With respect to the show of authority needed for detention, the circumstances must present some level of coercion, beyond the officer's mere employment, that conveys a demand for compliance or threat of tangible consequences from refusal." *Id.* at 544 (citations omitted). Moreover, "[a]lthough cases involving similar or comparable seizure determinations may serve as guideposts, a suppression court must independently employ the totality-of-the-circumstances test in determining whether a seizure occurred." *Commonwealth v. D. Thomas*, 273 A.3d 1190, 1197-98 (Pa.Super. 2022).

As noted above, the suppression court's conclusion that Appellant's interaction with Sergeant Turack constituted a mere encounter was predicated upon this Court's holding in *K. Thomas*. In that case, two officers in uniform and in a marked police vehicle responded to a radio report of a black male with a gun wearing a blue hooded sweatshirt at approximately 1:20 a.m. in a high crime area. *Id*. The officers arrived at the area within minutes of the dispatch and saw an individual wearing a black hooded sweatshirt. *Id*. As

the officers circled the block, the individual would reverse directions and look back at the officers. The officers pulled up next to the individual, whose hands were in his pockets, and asked to see his hands. *Id*. Since the individual refused to take his hands out of his pockets, the second officer exited the vehicle, removed the individual's hands from his pockets and patted him down, discovering a firearm on the individual's person. *Id*. This Court found that the officer's request to remove his hands did not elevate the encounter to an investigative detention. *Id*. (citing **Coleman**, **supra** at 1117) (additional citations omitted).

However, these suppression cases are fact-intensive and each stands on its own specific fact pattern. In **Commonwealth v. Hemingway**, 192 A.3d 126 (Pa.Super. 2018), two uniformed officers responded to an unspecified noise complaint in a high crime area around 2:00 a.m. When the officers arrived at the location, they saw the defendant, with his hands in his pockets, and another individual conversing with two women in a car. *Id*. at 128. The officers approached the defendant and ordered him to remove his hands from his pocket and put his hands on his head, so the officers could conduct a pat-down search. *Id*. Rather than endure the search, the defendant fled on foot. *Id*. On appeal, this Court held that the initial interaction between the officers and the defendant was not a mere encounter because the interaction commenced with a command to remove his hands from his pockets. *Id*. This Court determined that the actions of speaking to a woman in a high crime area with his hands in his pockets did not support

the existence of reasonable suspicion sufficient for a detention, and the command to remove his hands from his pockets was improper. *Id*. at 131.

While noting that the inquiry is fact specific, the *Hemingway* Court distinguished the facts before it from several other seemingly similar situations. Specifically, the court observed that, in *Commonwealth v. Hall*, 713 A.2d 650, 653 (Pa.Super. 1998), *rev'd on other grounds*, 771 A.2d 1232 (Pa. 2001), the defendant initiated contact with the police. *See Hemingway*, *supra* at 131. Likewise, *Coleman*, *supra*, was distinguished on the fact that, unlike in *Hemingway*, the officers were responding to a violent crime in progress, rather than a mere noise complaint. *Id*. Additionally, the defendant in *Coleman* matched the specific description of the suspect, and he placed his hands in his pockets after the police initiated the encounter. *Id*. The *Hemingway* Court also distinguished the relevant facts from *K. Thomas*, *supra,* wherein the defendant matched the description of an armed suspect and behaved suspiciously by attempting to evade the officers. *Id*. at 131-32.

Applying this caselaw to the instant case, we note the following relevant facts. In the matter *sub judice*, Sergeant Turack was in uniform and arrived at the scene in a marked vehicle following an anonymous radio call that individuals were throwing bottles outside of a McDonald's shortly after 1:00 a.m. on a warm, humid, night. N.T. Suppression Hearing, 4/27/21 at 5-6. Sergeant Turack testified that the area in question had several vehicle break-ins where firearms were stolen from vehicles. *Id*. at 7, 19-20. Sergeant Turack observed Appellant walking in the drive-thru of the McDonald's,

wearing a hooded sweatshirt, with the hood pulled up, and his hands in the center pocket. *Id*. At that time, Sergeant Turack rolled down the window and asked to talk to Appellant, to which Appellant kept walking and stated that he was just trying to get home. *Id*. at 23. After two failed attempts to talk to Appellant, Sergeant Turack exited the vehicle and stated, "I need to talk to you, come on over here," at which point, Appellant stopped and turned towards Sergeant Turack. *Id*.

Based upon the totality of the circumstances, a reasonable person would not have felt free to leave or otherwise terminate the encounter. Here, like in *Hemingway*, *supra* at 131, law enforcement were responding to reports of a non-violent offense. Appellant clearly attempted to leave. He ignored Sergeant Turack's initial requests to talk, and as he continued to walk away from the officer, Appellant eventually replied, "I'm just trying to go home." N.T. Suppression Hearing, 4/27/21 at 8. A reasonable person would not have felt free to leave once a uniformed officer exited their marked patrol vehicle and commanded, "I need to talk to you, come on over here," after two previous attempts to avoid an interaction with that uniformed officer. Accordingly, at the time Sergeant Turack exited the vehicle and issued the command, having been twice rebuffed by Appellant, the encounter elevated into an investigative detention for which Sergeant Turack was required to possess reasonable suspicion. *See Hampton*, *supra* at 456-57 ("If however, a police presence becomes too intrusive, the interaction must be deemed an

investigative detention or seizure. An investigative detention, by implication, carries an official compulsion to stop and respond.").

Having determined that Sergeant Turack seized Appellant, our two remaining inquiries concern whether Sergeant Turack possessed reasonable suspicion to conduct an investigative detention and to frisk Appellant for a weapon, respectively. We address the issues *seriatim*. "An investigatory detention is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inferences derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion." **Hampton**, **supra** at 459. In order to determine whether law enforcement had reasonable suspicion, this Court looks at the totality of the circumstances. **See Commonwealth v. Raglin**, 178 A.3d 868, 872 (Pa.Super. 2018). Moreover, "due weight must be given [to the law enforcement officer], not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences he is entitled to draw from the facts in light of his experiences." **Id**. (quoting **Terry v. Ohio**, 392 U.S. 1, 27 (1968))); **see also Commonwealth v. Riley**, 715 A.2d 1131, 1136 (Pa.Super. 1998) (holding that this Court must "view the circumstances through the eyes of a trained officer, not an ordinary citizen.").

Furthermore, reasonable suspicion can be established through a combination of otherwise innocent facts, when taken together. **Raglin**, **supra**, at 872 (citing **Commonwealth v. Cook**, 735 A.2d 673, 676 (Pa. 1999)). Reasonable suspicion is "considerably less than proof of wrongdoing

by a preponderance of the evidence." ***Commonwealth v. Millburn***, 191 A.3d 891, 898 (Pa.Super. 2018) (quoting ***Navarette v. California***, 572 U.S. 393 (2014); ***see also Commonwealth v. Fink***, 700 A.2d 447, 449 (Pa.Super. 1997) (explaining that reasonable suspicion is less than a "certainty, a preponderance, or even a fair probability."). Some factors to consider when determining whether an officer has reasonable suspicion, include "tips, the reliability of informants, time, location, and suspicious activity, including flight." ***Millburn***, ***supra*** at 898.

Recall that Sergeant Turack, a seven-year veteran, was responding to a call about individuals throwing bottles outside of a McDonald's around 1:00 a.m. N.T. Suppression Hearing, 4/27/21 at 5, 12, 18. The caller did not provide a description of the individuals. ***Id***. Sergeant Turack arrived at the scene approximately three minutes later and observed Appellant walking in the area of the McDonald's drive-thru wearing a hooded sweatshirt with the hood up, and his hands in his center pocket, on that muggy, summery, night. ***Id***. at 6-7. Sergeant Turack was aware that dozens of thefts from vehicles had occurred in that area and around that time of night, including five or six thefts of firearms from vehicles. ***Id***. at 19-20. Sergeant Turack explained that he "was looking at the time for somebody smashing bottles but knowing in the back of my mind that we have had all these incidents with stolen guns and, you know, people out at night checking cars." ***Id***. at 20. Moreover, Sergeant Turack testified that he knows people carry guns and weapons in their pockets. ***Id***.

- 12 -

Thus, based upon the totality of the circumstances, Sergeant Turack had reasonable suspicion to stop Appellant for questioning. Sergeant Turack responded to the area within minutes of the 911 call, and observed Appellant walking through a drive-thru of the McDonald's in a high crime area[2] after 1:00 a.m. Moreover, Appellant was wearing a sweatshirt with a hood up and hands in his pockets on a hot, stuffy, night. Accordingly, Sergeant Turack had reasonable suspicion to stop Appellant.

Similarly, Sergeant Turack also had reasonable suspicion to conduct a **Terry** frisk of Appellant for officer safety. If an "officer has reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may conduct a frisk of the individual's outer garments for weapons." **Commonwealth v. Scarborough**, 89 A.3d 679, 683 (Pa.Super. 2014) (cleaned up). The purpose of a **Terry** frisk is to allow an officer to continue an investigation without fearing for the safety of the officer or others nearby. **Id**. An officer's observation of a suspect's reaching movements can lead an officer to reasonably conclude his safety is in jeopardy. **See Commonwealth v. Wright**, 224 A.3d 1104, 1109 (Pa.Super. 2019). Moreover, "[i]n considering whether evidence supports a **Terry** frisk, we are 'guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where

_____

[2] Sergeant Turack specifically indicated that approximately twenty-forty thefts from automobiles occurred in that area, including the thefts of five to six firearms.

- 13 -

circumstances indicate that the suspect may have, or may be reaching for a weapon.'" **Wright**, **supra** at 1109 (quoting **Commonwealth v. Mack**, 953 A.2d 587, 590 (Pa.Super. 2008)).

When Sergeant Turack initiated the stop, Appellant's hands were in the center pocket of his sweatshirt, with his hood up, on a warm, sticky, night. Sergeant Turack, a seven-year veteran, knowing that he was in close proximity to Appellant and that people carry guns and weapons in the center pocket, asked Appellant to remove his hands from that pocket. Appellant complied; however, Appellant proceeded to place his hands back into the pocket and then remove them, again, upon request. This occurred between two and five times during Sergeant Turack's interaction with Appellant. Moreover, Sergeant Turack testified that he made the request for his safety. **See** N.T., 4/27/21, at 21-22. He explained, "I know that people carry guns and weapons in their pockets. And at that time I was in pretty close proximity." **Id**. at 20. Appellant refused to comply with the request to keep his hands out of his pocket. As described by Sergeant Turack, "when he would take them out, [he] would immediately go back toward the area [of the center pocket]." **Id**. at 22. Accordingly, because Appellant kept returning his hands to that center pocket despite repeated requests to remove them, Sergeant Turack was permitted to frisk Appellant's outer garments for weapons. **See Coleman**, **supra** at 1117.

In sum, although the suppression court erred in finding that the entire interaction between Appellant and Sergeant Turack constituted a mere

encounter until after the firearm was discovered, Appellant is not entitled to relief. For the foregoing reasons, Sergeant Turack possessed reasonable suspicion to initiate the investigatory stop and to conduct the subsequent frisk for weapons. Thus, the suppression court did not err in denying Appellant's motion to suppress the physical evidence. ***See Commonwealth v. Singletary***, 803 A.2d 769, 772-73 (Pa.Super. 2002) ("It is well[-]settled that where the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself.").

Judgment of sentence affirmed.

Judge Sullivan joins this Memorandum.

Judge Kunselman files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2022